**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JANIELLE DAWSON, individually and on behalf of all others similarly situated, | ) | |
| Plaintiff, | ) | No.: 1:25-cv-03497 |
| v. | ) | |
| THE UNIVERSITY OF PHOENIX, INC., | ) | Hon. Mary M. Rowland |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT**


Joel Griswold (6277574)
Bonnie Keane DelGobbo (6309394)
Katharine H. Walton (6339805)
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 3700
Chicago, Illinois 60606
(312) 416-6200 (phone)
(312) 416-6201 (fax)
jcgriswold@bakerlaw.com
bdelgobbo@bakerlaw.com
kwalton@bakerlaw.com

*Attorneys for Defendant*
*The University of Phoenix, Inc.*

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ............ 1

II. ARGUMENT ............ 1

A. Legal Standard ............ 1

B. Plaintiff Fails to State a Claim Under the VPPA ............ 1

1. The University Is Not a Video Tape Service Provider ............ 2

2. Plaintiff Is Not a Consumer ............ 4

3. Plaintiff Does Not Allege The University Knowingly Disclosed PII ............ 5

4. Plaintiff Fails to Allege Actual Damages ............ 7

5. The VPPA Violates The First Amendment ............ 9

C. Plaintiff Fails to State An Electronic Communications Privacy Act Claim ............ 14

1. The Wiretap Act Is A One-Party Consent Statute, And The University Was A Party To The Communications ............ 15

2. The Information Was Not Intercepted "In Transit." ............ 19

D. Plaintiff Fails to Plead a Violation of the Illinois Eavesdropping Act ............ 21

III. CONCLUSION ............ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................1

*Atkins v. City of Chi.*,
631 F.3d 823 (7th Cir. 2011)....................22

*B.K. v. Eisenhower Med. Ctr.*,
No. EDCV232092JGBKKX, 2024 WL 878100 (C.D. Cal. Feb. 29, 2024)....................15, 17

*Ballinger v. City of Oakland*,
398 F. Supp. 3d 560 (N.D. Cal. 2019)....................12

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
591 U.S. 610 (2020)....................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................1

*Brown v. Learfield Commc'ns, LLC*,
No. 1:23-CV-00374-DAE, 2024 WL 3676709 (W.D. Tex. June 27, 2024)....................18

*By-Prod Corp. v. Armen-Berry Co.*,
668 F.2d 956 (7th Cir. 1982)....................16

*Cantu v. Sunrun Inc.*,
No. 23-CV-974-JO-AHG, 2023 WL 11795670 (S.D. Cal. Nov. 22, 2023)....................3

*Cantu v. Tapestry, Inc.*,
No. 22-cv-1974-BAS-DDL, 2023 WL 4440662 (S.D. Cal. Jul. 10, 2023)....................3

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................18

*Carroll, et al., v. General Mills, Inc.*,
No.CV231746DSFMRWx, 2023 WL 4361093 (C.D. Ca. Jun. 26, 2023)....................3

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
447 U.S. 557 (1980)....................11

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010)....................10

*City of Ladue v. Gilleo*,
512 U.S. 43 (1994)....................13

*Cohen v. Casper Sleep Inc.*,
2018 WL 3392877 (S.D.N.Y. Jul. 12, 2018)....................17

*Desnick v. Am. Broad. Cos., Inc.*,
44 F.3d 1345 (7th Cir. 1995)....................17

*Doe v. Chao*,
540 U.S. 614 (2004)....................8

*Doe v. Genesis Health Sys.*,
No. 4:23-cv-04209-JEH, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025)....................15

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017)....................6

*Ellis v. Cartoon Network, Inc.*
803 F.3d 1251 (11th Cir. 2015)....................7

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011)....................15

*Fanin v. U.S. Dep't of Veterans Affs.*,
572 F.3d 868 (11th Cir. 2009)....................8, 9

*FCC v. Airadigm Communications, Inc.*,
616 F.3d 642 (7th Cir. 2010)....................8

*Gardner v. Me-TV National Limited Partnership*,
132 F.4th 1022 (7th Cir. 2025)....................5

*GEFT Outdoor, L.L.C. v. City of Westfield*,
491 F. Supp. 3d 387 (S.D. Ind. 2020)....................11

*Ghanaat v. Numerade Labs, Inc.*,
No. 23-CV-00833, 2023 WL 5738391 (N.D. Cal. Aug. 28, 2023)....................6

*In re Google Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)....................15, 16

*Greater New Orleans Broad. Ass'n, Inc. v. United States*,
527 U.S. 173 (1999)....................13

*Gresham v. Peterson*,
225 F.3d 899 (7th Cir. 2000)....................11

*In re Grp. Health Plan Litig.*,
No. 23-CV-267, 2023 WL 8850243 (D. Minn. Dec. 21, 2023) ..........16

*Hartley v. Univ. of Chicago Med. Ctr.*,
No. 22 C 5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) ..........15

*In re High Fructose Corn Syrup Antitrust Litig.*,
216 F.3d 621 (7th Cir. 2000) ..........17

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ..........18

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ..........20

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ..........15

*McDonald's v. Levine*,
439 N.E.2d 475 (Ill. App. Ct. 1982) ..........22

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) ..........6, 7

*Osheske v. Silver Cinemas Acquisition Co.*,
132 F.4th 1110 (9th Cir. 2025) ..........3

*Reed v. Town of Gilbert, Ariz.*,
576 U.S. 155 (2015) ..........10, 11

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015) ..........5

*Rodriguez v. Delta T LLC*,
No. 2:23-CV-03717-HDV-AGR, 2023 WL 9419152 (C.D. Cal. Dec. 12, 2023) ..........3

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ..........20

*Rubin v. Coors Brewing Co.*,
514 U.S. 476 (1995) ..........13

*Salazar v. National Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024) ..........5

*Salazar v. Paramount Global*,
133 F.4th 642 (6th Cir. 2025) ..........5

*Solomon v. Flipps Media, Inc.*,
No. 22CV5508JMAJMW, 2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023) ..............................6

*Solomon v. Flipps Media, Inc.*,
No. 23-7597-CV, 2025 WL 1256641 (2d Cir. May 1, 2025) ..............................6, 7

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)..............................10, 11, 13

*Sosa v. Onfido, Inc.*,
600 F. Supp. 3d 859 (N.D. Ill. 2022) ..............................11

*Steve Jackson Games, Inc. v. U.S. Secret Service*,
36 F.3d 457 (5th Cir. 1994) ..............................20

*Sussman v. American Broadcasting Cos.*,
186 F.3d 1200 (9th Cir. 1999) ..............................18

*Tawam v. Feld Ent. Inc.*,
684 F. Supp. 3d 1056 (S.D. Cal. 2023)..............................14

*Thomas v. Pearl*,
998 F.2d 447 (7th Cir. 1993) ..............................17

*Thompson v. W. States Med. Ctr.*,
535 U.S. 357 (2002)..............................12

*U.S. West, Inc. v. FCC*,
182 F.3d 1224 (10th Cir. 1999) ..............................10, 12, 13

*United States v. Dawson*,
64 F.4th 1227 (11th Cir. 2023) ..............................9

*United States v. Palomares*,
52 F.4th 640 (5th Cir. 2022) ..............................8

*United States v. Sparks*,
806 F.3d 1323 (11th Cir. 2015) ..............................12

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..............................2, 14

*Wollschlaeger v. Governor of Fla.*,
848 F.3d 1293 (11th Cir. 2017) ..............................11

*Woodard v. Health Ins. All.*,
No. 23 C 2630, 2024 WL 942629 (N.D. Ill. Mar. 5, 2024) ..............................22

*Wooten v. La Salle Corr.*,
No. 7:22-CV-000148 (WLS), 2024 WL 4132331 (M.D. Ga. Sept. 10, 2024) ........................12

*Zak v. Bose*,
No. 17-xv-02928, 2019 WL 1437909 (N.D. Ill. Mar. 31, 2019) ..........................................21

**Statutes**

720 ILCS 5 *et seq.* .......................................................................................1, 18, 21, 22

5 U.S.C. § 552a ...................................................................................................8, 9

18 U.S.C. § 2510 *et seq* ...................................................................................... *passim*

18 U.S.C. § 2511 .....................................................................................14, 15, 16

18 U.S.C. § 2710 ................................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6)..............................................................................................1

**Other Authorities**

34 CFR § 99 .......................................................................................................18, 19

Black's Law Dictionary (5th ed. 1979)..........................................................................9

Black's Law Dictionary (10th ed. 2014)........................................................................8

Business, Merriam-Webster.com Dictionary, Merriam-Webster,
https://www.merriam-webster.com/dictionary/business .........................................................2

Enroll, Merriam-Webster.com Dictionary, Merriam-Webster,
https://www.merriam-webster.com/dictionary/enroll...........................................................4

Good, Merriam-Webster.com Dictionary, Merriam-Webster,
https://www.merriam-webster.com/dictionary/good .............................................................4

J.G. Sutherland, Statutes And Statutory Construction § 267 (1st ed. 1891)..................................8

Livelihood, Merriam-Webster.com Dictionary, Merriam-Webster,
https://www.merriam-webster.com/dictionary/livelihood.......................................................2

Maintain, Merriam-Webster.com Dictionary, Merriam-Webster,
https://www.merriam-webster.com/dictionary/maintain .......................................................19

S. Rep. No. 100-599 (1988) ...........................................................................4, 12

Service, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/service ....................4

Student, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/student ....................4

U.S. Const. amend. I ....................1, 9, 10, 12

U.S. Const. amend. IV ....................12

Webster's Ninth New Collegiate Dictionary 630 (1985) ....................20

## I. INTRODUCTION

Plaintiff Janielle Dawson ("Plaintiff") filed this putative class action, alleging she visited Defendant The University of Phoenix, Inc.'s ("the University") website to enroll and participate in courses that included video content, and that the University disclosed unspecified information about her "video-watching behavior" and "education records" to third parties, including Facebook, Google, LinkedIn, TikTok, Microsoft, and Amazon, through tracking technologies installed on the University's website, without obtaining Plaintiff's consent. Plaintiff alleges this conduct violates the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), Family Educational Rights and Privacy Act ("FERPA"), Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq*. (the "Wiretap Act"), and Illinois Eavesdropping Act, 720 ILCS 5 *et seq.* ("IEA"). However, Plaintiff has not alleged conduct violative of the VPPA because the University is not a video tape service provider; Plaintiff is not a consumer; she has not alleged the disclosure of personally identifiable information; Plaintiff failed to allege damages; and the VPPA violates the First Amendment. Further, Plaintiff has failed to state claims under the Wiretap Act or IEA.

## II. ARGUMENT

### A. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court assessing the sufficiency of a complaint must disregard legal labels or conclusions, which are not entitled to the presumption of the truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

### B. Plaintiff Fails to State a Claim Under the VPPA.

To state a VPPA claim, Plaintiff must allege the University (1) is a video tape service

provider ("VTSP"); (2) who knowingly disclosed to any person; (3) personally identifiable information; (4) concerning any consumer. *See* 18 U.S.C. 2710(b)(1). Plaintiff fails to allege the requisite elements, including actual damages. Additionally, the VPPA is unconstitutional.

**1. The University Is Not a Video Tape Service Provider.**

A "video tape service provider" is defined as "any person, ***engaged in the business***, in or affecting interstate or foreign commerce, ***of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials*** . . . ." 18 U.S.C. § 2710(a)(4) (emphasis added). But as Plaintiff alleges, the University is an "education institution" offering courses and degree programs (ECF No. 1. ¶ 4.), and Plaintiff allegedly "watch[ed] prerecorded University of Phoenix videos in connection with completing her coursework." (ECF No. 1 ¶ 7.)

"Business" is defined as "a usually commercial or mercantile activity engaged in as a means of livelihood." *See* "business" (def. 1a), https://www.merriam-webster.com/dictionary/business (last visited May 12, 2025). "Livelihood" is defined as "means of support or subsistence." *See* "livelihood" (def. 1), https://www.merriam-webster.com/dictionary/livelihood (last visited May 12, 2025). Thus, to be "engaged in the business" of a particular activity, that activity must be the company's "means of support or subsistence." *See In re Vizio, Inc., Consumer Priv. Litig*., 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) (to be "engaged in the business…of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," "the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose"). In other words, delivering video materials must be the "focus of the defendant's work," and businesses which are only "peripherally or passively involved in video content delivery do not fall within the statutory definition of a video tape service provider." *Id.* at 1221-22.

Plaintiff does not allege the University's means of support or subsistence is renting, selling, or delivering video materials, or that delivering video materials is the focus of the University's business. To the contrary, Plaintiff alleges that the focus of the University's business is "post-secondary education." (ECF No. 1 ¶¶ 4, 12.) The fact that some of the University's courses may include prerecorded videos among other forms of content does not make the University "engaged in the business…of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials . . . ." 18 U.S.C. § 2710(a)(4). Video materials are not, in and of themselves, the focus of the University's business where Plaintiff "sought to obtain a Bachelor of Science Degree in Business." (ECF No. 1 ¶ 4.) Merely utilizing videos as one means of conveying course content does not convert an entity into a "video tape service provider" when the focus of the defendant's business is not renting, selling, or delivering video materials in and of itself. *See Carroll, et al., v. General Mills, Inc.*, No.CV231746DSFMRWx, 2023 WL 4361093 at *3-4 (C.D. Ca. Jun. 26, 2023) (finding General Mills was not a VTSP where "[t]he few allegations in the FAC about General Mills' business are conclusory" and "[n]othing suggests that Defendant's business is centered, tailored, or focused around providing and delivering audiovisual content."); *Cantu v. Tapestry, Inc.*, No. 22-cv-1974-BAS-DDL, 2023 WL 4440662, *8 (S.D. Cal. Jul. 10, 2023); *Rodriguez v. Delta T LLC*, No. 2:23-CV-03717-HDV-AGR, 2023 WL 9419152,*4 (C.D. Cal. Dec. 12, 2023); *Cantu v. Sunrun Inc.*, No. 23-CV-974-JO-AHG, 2023 WL 11795670, *3 (S.D. Cal. Nov. 22, 2023); *accord Osheske v. Silver Cinemas Acquisition Co.*, 132 F.4th 1110 (9th Cir. 2025) (examining terms "rental, sale, or delivery" and "prerecorded video cassette tapes" in concluding that movie theaters are not "video tape service providers"). Holding to the contrary would convert every school which has ever shown videos to its students as part of their coursework into a "video tape service provider."

Legislative history reinforces this conclusion, which flows inescapably from the language of the statute. "The impetus for this legislation occurred when a weekly newspaper in Washington published a profile of Judge Robert H. Bork based on the titles of 146 films his family had rented from a video store." *See* S. Rep. No. 100-599 at 5. Congress explained that the law "prohibits *video stores* from disclosing…information that links the customer or patron to particular materials or services." *Id.* at 7 (emphasis added). A university is a far cry from a video rental store. The University is not a "video tape service provider" under the statute.

### 2. <u>Plaintiff Is Not a Consumer.</u>

A "consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Plaintiff fails to allege that she rented, purchased, or subscribed to *any* goods or services. Rather, Plaintiff alleges she was a "renter[], subscriber[] and/or purchaser[] of . . . class and degree programs that included prerecorded videos as part of their content." (ECF No. 1 ¶ 100.) But a student is "one who *attends* a school." *See* "student" (def. 1), https://www.merriam-webster.com/dictionary/student (last visited May 22, 2025) (emphasis added). Enrolling in a degree program and attending a school does not make Plaintiff a "renter," "subscriber," or "purchaser of anything. *See* "enroll" (def. 1), https://www.merriam-webster.com/dictionary/enroll (last visited May 22, 2025) ("to insert, register, or enter in a list, catalog, or roll"). It would be absurd to say that students rent, purchase, or subscribe to a degree program; students pay tuition, which allows them to enroll and attend a school as a student.

Furthermore, a post-secondary degree program is not a good or service. *See* "good" (def. 3d), https://www.merriam-webster.com/dictionary/good (last visited May 20, 2025) ("something manufactured or produced for sale"); *See* "service" (def. 2a), https://www.merriam-webster.com/dictionary/service (last visited May 12, 2025) ("the work performed by one

that serves"). A course is not "manufactured" or "produced" for sale. Nor did Plaintiff purchase a "service," as one might purchase a monthly home landscaping service.

Finally, in addition the issues above, "a person is a 'consumer' only when he subscribes to 'goods or services' in the nature of 'video cassette tapes or similar audio visual materials.' Together, 'text and context point to the same place:' the expression 'goods or services' is limited to audiovisual ones." *Salazar v. Paramount Global*, 133 F.4th 642, 650-51 (6th Cir. 2025) (citations omitted).[1] As explained above, Plaintiff alleges she enrolled in a degree program and courses which happened to include some prerecorded videos as part of their content. (ECF No. 1 ¶¶ 4, 6-7.) Neither a degree program nor courses are "video cassette tapes or similar audio visual materials."

**3. <u>Plaintiff Does Not Allege The University Knowingly Disclosed PII.</u>**

The VPPA states that PII "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Unless a VTSP has provided notice and obtained consent, it is prohibited from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). "[T]he information disclosed by a video tape service provider must, at the very least, identify a *particular person*—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015). The VPPA "views disclosure from the perspective of the disclosing party" and "looks to what information a video service provider

[1] *Contra Salazar v. National Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024); *Gardner v. Me-TV National Limited Partnership*, 132 F.4th 1022 (7th Cir. 2025). *NBA* and *Gardner* both looked only at whether the goods and services must be audiovisual, and did not address (because the defendants apparently did not raise) the predicate issues that the University raises here concerning whether the plaintiff is a "renter, purchaser, or subscriber" of any "goods or services" at all.

discloses, not to what the recipient of that information decides to do with it." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). As several appellate courts and the overwhelming majority of district courts nationwide have held, PII under the VPPA is "the kind of information that would ***readily permit an ordinary person*** to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 267 (3d Cir. 2016) (emphasis added); *see also Solomon v. Flipps Media, Inc.*, No. 23-7597-CV, 2025 WL 1256641 (2d Cir. May 1, 2025) (PII "encompasses information that would allow an ordinary person to identify a consumer's video-watching habits"); *Eichenberger*, 876 F.3d at 985.

Plaintiff's claim must be dismissed because she has not alleged a disclosure of PII to a third-party; her Complaint is rife with *legal conclusions* that PII was disclosed, not well-pled *facts* to establish that any alleged disclosure included PII. Plaintiff alleges the following information was disclosed: a "Pixel ID and cookie" transmitted to Facebook (ECF No. 1 ¶ 35), "device identifiers and IP addresses" transmitted to Google, (*id.* ¶ 47), an IP address and "device and browser characteristics" to LinkedIn, (*id.* ¶ 54), an IP address and "identification code" to TikTok, (*id.* ¶¶ 64, 67), a "Machine Unique Identifier" to Microsoft, (*id.* ¶ 71), and "software code" created by Amazon, (*id.* ¶ 72). But there are no factual allegations supporting that any of this information would "readily permit an ordinary person to identify a specific individual's video-watching behavior." Plaintiff's generalized are insufficient to establish that any information which meets the statutory definition of "personally identifiable information" was disclosed.[2]

[2] Plaintiff also does not allege her Facebook profile contains personally identifying information. *See Ghanaat v. Numerade Labs, Inc.*, No. 23-CV-00833, 2023 WL 5738391, at *4 (N.D. Cal. Aug. 28, 2023) ("plaintiffs' allegations are inadequate because they do not allege their Facebook pages contain any personal information, such as their names or email addresses"); *Solomon v. Flipps Media, Inc.*, No. 22CV5508JMAJMW, 2023 WL 6390055, at *3 (E.D.N.Y. Sept. 30, 2023), *aff'd*, No. 23-7597-CV, 2025 WL 1256641 (2d Cir. May 1, 2025) (same).

Significantly, the only federal appellate court to address whether Facebook IDs constitute PII under the VPPA has held that they do not. *Solomon v. Flipps Media, Inc.*, No. 23-7597-CV, 2025 WL 1256641 (2d Cir. May 1, 2025). The Second Circuit explained that PII under the VPPA "encompasses information that would allow an ordinary person to identify a consumer's video-watching habits, but not information that only a sophisticated technology company could use to do so." *Id.* at *9. Applying this standard to the exact same type of computer code transmission at issue in this case, the Second Circuit held it was "implausible that an ordinary person would look at the" information "and understand it to be" information which identifies a video title and a specific person. *Id.* at *10-11.

Plaintiff's allegations all concern static digital identifiers, which as defined in *Ellis v. Cartoon Network, Inc*. 803 F.3d 1251, 1257 (11th Cir. 2015), include such things as a unique device identifier that is "randomly generated when a user initially sets up his device and should remain constant for the lifetime of the user's device." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 282, n.124 (citing *Ellis*). These random strings of numbers, when viewed by an ordinary person, do not identify who that person is. Rather, "[t]o an average person, ***an IP address or a digital code in a cookie file_would likely be of little help in trying to identify an actual person.***" *In re Nickelodeon*, 827 F.3d at 283 (emphasis added).

Finally, Plaintiff does not allege that the University *knew* whether she or any other user, had a Facebook, TikTok, LinkedIn, or other account, much less what those identifiers were. Therefore, Plaintiff does not plausibly allege the University *knowingly* disclosed PII to third parties. Her claim must be dismissed.

#### 4. Plaintiff Fails to Allege Actual Damages.

Under the VPPA, a court may award "actual damages but not less than liquidated damages

in an amount of $2,500." 18 U.S.C. 2710(c). When read in context, it is apparent that the language "but not less than liquidated damages in an amount of $2,500" is intended to limit the phrase actual damages. *See FCC v. Airadigm Communications, Inc.*, 616 F.3d 642, 655 (7th Cir. 2010) ("The last antecedent rule provides that '[r]elative and qualifying phrases, grammatically and legally, where no contrary intention appears, refer solely to the last antecedent.'") (quoting J.G. Sutherland, Statutes And Statutory Construction § 267, at 349 (1st ed. 1891)).

In *Doe v. Chao*, 540 U.S. 614 (2004), the Supreme Court interpreted the Privacy Act of 1974, which has language similar to the VPPA that provides for "actual damages sustained by the individual…but in no case shall a person entitled to recovery receive less than the sum of $1,000." *Id.* at 619 (quoting 5 U.S.C. § 552a(g)(4)(A)). The Court held that actual damages are a prerequisite to recovering the statutory amount. *Id.* at 627; *see also Fanin v. U.S. Dep't of Veterans Affs.*, 572 F.3d 868, 872 (11th Cir. 2009) ("Obtaining monetary damages under § 552a(g)(4) requires proof of 'actual damages.'"). The Court's explained that its interpretation of the damages language turned on the presence of the phrase "actual damages" in the statute, *see Doe*, 540 U.S. at 623 n.8—the phrase that is also present in the VPPA's damages provision. Indeed, as the Privacy Act illustrates, Congress was deliberate in its use of "damages," specifying when "damages" are available (*see* 5 U.S.C. § 552a(g)(4)(A ) versus "fines" (*see* 5 U.S.C. § 552a(i)(1)). To read the VPPA as permitting an award of $2,500 in the absence of actual damages requires substituting the conjunction "or" in the place of the phrase "but not less than," *United States v. Palomares*, 52 F.4th 640 (5th Cir. 2022) ("'Or' is disjunctive.") (citing *Conjunctive/disjunctive canon*, Black's Law Dictionary (10th ed. 2014)), is at odds with the plain language.

Here, Plaintiff has not alleged any actual damages that can open the door to the VPPA's statutory minimum damages. The phrase "actual damages" is not defined in the VPPA, but other

circuits have interpreted "actual damages" as permitting "recovery only for proven pecuniary losses and not for generalized mental injuries, loss of reputation, embarrassment or other non-quantifiable injuries." *Fanin*, 572 F.3d at 872-73. The *Black's Law Dictionary* definition from the time the VPPA was enacted further supports this conclusion. *See United States v. Dawson*, 64 F.4th 1227, 1236 (11th Cir. 2023) (explaining that courts "look to the plain and ordinary meaning of the statutory language as it was understood at the time the law was enacted," which can be determined "by looking at dictionaries in existence around the time of enactment"). The applicable edition of *Black's Law Dictionary* defines "actual damages" as follows: "Real, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed on the one hand to 'nominal' damages, and on the other to 'exemplary' or 'punitive' damages. Synonymous with 'compensatory damages' and with 'general damages.'" *Damages*, *Black's Law Dictionary* (5th ed. 1979). The Complaint alleges nothing more than mere sharing of Plaintiff's information, which is a non-quantifiable injury, and thus, does not satisfy the "actual damages" requirement. (*see* ECF No. 1, ¶ 8); *see also Fanin*, 572 F.3d at 870, 875 (holding that plaintiffs who names, social security numbers, birth dates, and healthcare files were contained on a stolen hard drive could not recover statutory damages under the Privacy Act of 1974 because they failed to show any pecuniary loss). Thus, Plaintiff is not entitled to damages under the VPPA.

**5. <u>The VPPA Violates The First Amendment.</u>**

The Complaint should be dismissed because it seeks to enforce a statute that violates the First Amendment. The First Amendment states, "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I. Laws like the VPPA that "burden" speech are unconstitutional unless they satisfy First Amendment scrutiny. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011); *U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1224 (10th Cir. 1999) (holding that an

FCC regulation violated the First Amendment where it restricted telecommunication carriers from using customer information "that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship" because it made speech more difficult by limiting the ability of carriers to target their speech to a particular audience). The VPPA imposes severe speech restrictions that cannot be justified.

To begin, the VPPA triggers First Amendment scrutiny because it places speaker- and content-based restrictions on the dissemination of information. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015); *Sorrell*, 564 U.S. at 567. The First Amendment "[p]rohibit[s] restrictions [that] distinguish[] among different speakers." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010); *see also Reed*, 576 U.S. at 170. Further, content-based restrictions "are presumptively unconstitutional. . . ." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).

A burden is speaker-based if it applies only to some classes of speakers and content-based if its application turns on the message of regulated speech. *Sorrell,* 564 U.S. at 567. Here, the VPPA applies only to a "video tape service provider" and prohibits only the disclosure of "personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). Its dictates are speaker-based because they "target[s] those speakers" within their gateway definitions and no others, *Sorrell*, 564 U.S. at 565, and content-based because its applicability "depend[s] entirely on the communicative content of the" disclosures. *Reed*, 576 U.S. at 164. The Supreme Court in *Sorrell* held that a Vermont law restricting "the sale, disclosure, and use of prescriber-identifying information," which pharmacies receive when processing prescriptions, was both content- and speaker-based and triggered "heightened scrutiny." 564 U.S. at 571. The VPPA likewise forbids specified speakers from disclosing information that can be identified only by its content. First Amendment scrutiny applies.

As an initial matter, strict scrutiny is the applicable standard. *See Reed*, 576 U.S. at 163, 171. The VPPA must therefore be "narrowly tailored to serve compelling state interests." *Id*. Although *Sorrell* declined to decide whether strict scrutiny or the intermediate standard under *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980), applies to content- and speaker-based commercial speech, 564 U.S. at 571, the Court more recently applied strict scrutiny to a ban on robocalls, reasoning that, under its "precedents, a 'law that is content based' is 'subject to strict scrutiny.'" *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 621 (2020) (quoting *Reed*, 576 U.S. at 165).

But the VPPA cannot even satisfy intermediate scrutiny, as the law is not "narrowly tailored to serve a significant governmental interest." *GEFT Outdoor, L.L.C. v. City of Westfield*, 491 F. Supp. 3d 387, 407 (S.D. Ind. 2020) (quoting *Gresham v. Peterson*, 225 F.3d 899, 905 (7th Cir. 2000)). And a court "need not decide whether strict scrutiny applies," if a law does not survive constitutional scrutiny under either standard. *See Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1308 (11th Cir. 2017). That is the case here.

For example, under an intermediate scrutiny "commercial speech inquiry" it must be shown "at least that the statute directly advances a substantial governmental interest and that the measure is drawn to achieve that interest." *Sorrell*, 564 U.S. at 572. This test is often expressed in four inquiries: (1) whether the speech concerns "lawful activity" and is not "misleading," (2) whether the government interest in burdening speech is "substantial," (3) whether "the regulation directly advances the asserted government interest," and (4) whether the regulation is more extensive than is necessary to serve that interest. *Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859 (N.D. Ill. 2022) (quoting *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002)). The VPPA fails each inquiry.

First, it does not prevent misleading speech or address illegal businesses.

Second, no substantial interest supports the severe speech prohibitions. "[T]he government cannot satisfy the second prong of the *Central Hudson* test by merely asserting a broad interest in privacy," but must also "specify the particular notion of privacy and interest served" and demonstrate "that the state has considered the proper balancing of the benefits and harms of privacy." *U.S. West*, 182 F.3d at 1234-35. Congress's record for the VPPA specified that the statute protects the notion of privacy defined by the First and Fourth Amendments. S. Rep. No. 100-599, at 4-5 (1988), *as re-printed in* 1988 U.S.C.C.A.N. 4342-4. But both Amendments constrain only state action. *See United States v. Sparks*, 806 F.3d 1323, 1334 (11th Cir. 2015); *Ballinger v. City of Oakland*, 398 F. Supp. 3d 560, 574 (N.D. Cal. 2019), *aff'd*, 24 F.4th 1287 (9th Cir. 2022); *Wooten v. La Salle Corr.*, No. 7:22-CV-000148 (WLS), 2024 WL 4132331, *6 (M.D. Ga. Sept. 10, 2024). So the VPPA, which burdens private businesses, does not "extend" their rights, S. Rep. No. 100-599 at 2. And the choice to prohibit private speech in the name of "intellectual freedom," *id.* at 4, makes little sense.

The legislative history also cites an incident "when a weekly newspaper in Washington published a profile of Judge Robert H. Bork based on the titles of 146 films his family had rented from a video store" and one other incident where "the attorney for a woman in a child custody proceeding made an informal request for the records of every film rented by her husband in an effort to show that, based on his viewing habits, he was an unfit father." *Id.* at 5-6. But simply reciting two incidents—out of innumerable video rentals nationwide—does not "show that the dissemination of the information desired to be kept private would inflict specific and significant harm on individuals." *U.S. West*, 182 F.3d at 1235. In neither incident did any harm arise. Judge Bork's Supreme Court nomination failed because of his judicial philosophy, not his video rentals,

and there is no evidence that the attorney in the custody proceeding obtained the film records.[3] Simply put, the legislative history cites not one incident of harm arising from disclosure of video rentals. *See Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995) (explaining that the burden "is not satisfied by mere speculation or conjecture") (quotation marks omitted).

Third, even if a privacy interest were sufficient, the VPPA does not "directly advance[]" it. *Sorrell*, 564 U.S. at 572. "There must be a 'fit between the legislature's ends and the means chosen to accomplish those ends.'" *Id.* The VPPA is unconstitutionally underinclusive. *See Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 190 (1999). "While surprising at first glance, the notion that a regulation of speech may be impermissibly *underinclusive* is firmly grounded in basic First Amendment principles." *City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994) (footnote omitted). Underinclusive laws present "risks of viewpoint and content discrimination," and "[t]hey may diminish the credibility of the government's rationale for restricting speech in the first place." *Id.* at 52.

The VPPA protects privacy in the most selective and irrational of ways. It protects only "video" purchases, rentals, or deliveries, 18 U.S.C. § 2710(a)(3), but not books, magazines, music, and pictures. "The failure to prohibit the disclosure of" purchases of such materials "makes no rational sense if the Government's true aim is to" protect intellectual privacy or guard against embarrassment from public disclosure of information people consume at home. *Rubin*, 514 U.S. at 488. Under the statute, renting *Lassie* activates fulsome statutory penalties if that rental is disclosed, but books, magazines, and photographs with sexual content (or any content) receive no protection. Likewise, because the statutes protect only "prerecorded" materials, 18 U.S.C. § 2710(a)(4), someone who watches livestreamed video content (no matter how embarrassing)

---

[3] Given substantial amounts of private information are exchanged daily in litigation discovery, it is hard to see what a litigation incident could say about an important privacy interest.

receives none of the rights provided to those who watch prerecorded content (no matter how innocuous). The *same* video content will be unprotected on a first, live showing but may be protected on later showings. The VPPA is also selective in its application to some businesses, but not others. The statute applies to a video obtained from a business having "a focus" of video rental (*e.g.*, Netflix) but not to the *same video* from a business without that focus (*e.g.*, Target). *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221-22 (C.D. Cal. 2017). And it selectively reaches renters, purchasers, and subscribers, but no one else. *Tawam v. Feld Ent. Inc.*, 684 F. Supp. 3d 1056, 1061 (S.D. Cal. 2023). This burdens some speakers, but not others, for no reason whatsoever.

Finally, Congress could have passed a privacy law that protects privacy in a rational manner without this selectivity such as by applying directives to all content for which an intellectual-privacy interest might reasonably attach, and all suppliers of that content. Instead, Congress picked out the case of a single judicial nominee, drew up a law to prevent *that* case from reoccurring, and protected practically nothing else. This is so irrational that the VPPA will not even do that: if all internet images a future judicial nominee ever viewed are made public, the statutes invoked here will say nothing about that—even though that would be no different from the Bork incident that inspired the VPPA. That is no way to protect privacy, and it does not justify severe speech burdens.

**C. Plaintiff Fails to State An Electronic Communications Privacy Act Claim.**

Plaintiff alleges the University violated Section 2511(1)(a) of the Wiretap Act. To state a claim for violation of Section 2511(1)(a), Plaintiff must allege the University "intentionally intercept[ed], endeavor[ed] to intercept, or procure[d] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a).

### 1. <u>**The Wiretap Act Is A One-Party Consent Statute, And The University Was A Party To The Communications.**</u>

There is no liability under the Wiretap Act if: (1) the defendant is a party to the communication or (2) one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act. 18 U.S.C. § 2511; *Hartley v. Univ. of Chicago Med. Ctr.*, No. 22 C 5891, 2023 WL 7386060, at *1 (N.D. Ill. Nov. 8, 2023) (holding the Wiretap Act "has a provision that it is lawful for a person to intercept an electronic communication where such person is a party to the communication. § 2511(2)(d). Therefore, since [defendant] is a necessary party to any communication from a patient concerning the provision of healthcare, it cannot be liable to the receipt of the communication.").

Here, Plaintiff goes to great lengths to allege the University placed various types of alleged "tracking tools" on the website. (ECF No. 1 ¶¶ 26-84.) It is now well-settled law that where a plaintiff claims that use of a pixel on a website resulted in the unlawful interception of the plaintiff's communications, the website owner is a "party to the communication." *Hartley*, 2023 WL 7386060, at *1; *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 842 (N.D. Ill. 2023); *Doe v. Genesis Health Sys*., No. 4:23-cv-04209-JEH, 2025 WL 1000192, at *8 (C.D. Ill. Mar. 18, 2025); *In re Google Cookie Placement Consumer Priv. Litig.,* 806 F.3d 125, 142-43 (3d Cir. 2015) (dismissing Wiretap Act claim because tracking cookies placed by advertising providers made the advertiser the intended recipient of the electronic transmission); *In re Facebook Priv. Litig.,* 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011) (dismissing Wiretap Act claim on same grounds); *B.K. v. Eisenhower Med. Ctr.,* No. EDCV232092JGBKKX, 2024 WL 878100, at *5 (C.D. Cal. Feb. 29, 2024) (dismissing Wiretap Act claim involving Pixel because defendant was website operator and, therefore, was a party to the information that plaintiff entered on its website).

The Wiretap Act also makes clear that liability will only attach to an interception when none of the parties to the communication have consented. *In re Google Inc. Cookie Placement Consumer Priv. Litig*., 806 F.3d at 135 ("[O]rdinarily, no cause of action will lie against a private person ...[']where one of the parties to the communication has given prior consent to such interception.'" (quoting 18 U.S.C. § 2511(2)(2)); *In re Grp. Health Plan Litig*., No. 23-CV-267 (JWB/DJF), 2023 WL 8850243, at *7 (D. Minn. Dec. 21, 2023) (holding that if the "defendant is the intended recipient of a communication . . . , then they are 'necessarily one of its parties' and 'have done nothing unlawful under the Wiretap Act,' even when they procured the conversation through a fraud in the inducement or through deceit'"). Clearly, here, one of the parties to the communication—the University—consented to the use of pixels and tracking technologies on its websites. Plaintiff herself alleges the University "install[ed] and embed[ed] third-party tracking technology . . . into phoenix.edu" (ECF No. 1 ¶ 2.) Therefore, there can be no question that the University consented to the alleged interception of the communications between Plaintiff and the University.

Although there is a statutory exception for one-party consent under the Wiretap Act where a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State," 18 U.S.C. § 2511(2)(d), this exception does not apply to the alleged interception itself; instead, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *In re Google Cookie Placement,* 806 F.3d at 145 (emphasis in original) (citation omitted). *See By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, 960 (7th Cir. 1982) ("We think it is the use of the interception ***with intent to harm*** rather than the fact of interception that is critical to liability, and

there was no use of the interception here.") (emphasis added); *Thomas v. Pearl*, 998 F.2d 447, 451 (7th Cir. 1993) (interpreting exception, holding "[t]his means Thomas must show that Pearl either intended to break the law or commit a tort against him in order to prove a violation of the federal statute"); *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995) (refusing to apply the exception where "[t]he defendants did not order the camera-armed testers into the Desnick Eye Center *in order to commit a crime or a tort*") (emphasis added); *In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621, 624 (7th Cir. 2000) ("Some states prohibit a person from recording his telephonic or other conversations without the other person's consent, but Title III does not, *unless the person both is not acting under color of state law* ***and has a criminal or tortious purpose***.") (Posner, J.) (emphasis added). Plaintiff has not pled a predicate criminal or tortious act for at least two independent reasons.

First, Plaintiff has not identified a single crime or tort *separate and independent* from the University's alleged use of third party tracking tools' to intercept communications. Plaintiff's claim is tethered to the alleged transmission of browsing and search activities on the University's website,[4] not another independent tortious or criminal act. *See B.K.*, 2024 WL 878100 at *5 (dismissing Wiretap Act claim holding that, "[w]hile Plaintiffs allege that Defendant engaged in the allegedly illegal interception of their and the proposed class members' information 'for Defendant's commercial advantage,' Plaintiffs do not allege that this purpose constitutes independently illegal or actionable conduct such that the party exception is inapplicable."); *Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *3-4 (S.D.N.Y. Jul. 12, 2018) (rejecting argument that tortious or criminal conduct exception should apply to alleged internet tracking; "This too fails because Defendants did not intercept communications 'for the purpose' of committing a crime or

[4] Plaintiff has not taken any course with Defendant since 2022.

tort."). As Plaintiff alleges, "Defendant used, or endeavored to use, the contents of the electronic communications of Plaintiff and Class members to generate profits and increase revenues by, *inter alia*, attempting to increase its enrollment through targeted advertising and improve its course offerings . . . ." (ECF No. 1 ¶ 120.) Similarly, her claim that the University intended to commit a crime or tort under the VPPA, Wiretap Act, IEA, and FERPA are all premised on this alleged disclosure and interception by third parties. This purpose fails to meet the crime-tort exception because they are not crimes "separate and independent" from the interception; they are crimes based on the interception. *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010); *Sussman v. American Broadcasting Cos.*, 186 F.3d 1200, 1201–03 (9th Cir. 1999); *Brown v. Learfield Commc'ns, LLC*, No. 1:23-CV-00374-DAE, 2024 WL 3676709, at *5 (W.D. Tex. June 27, 2024), *appeal dismissed sub nom.*, No. 24-50632, 2024 WL 5380272 (5th Cir. Nov. 13, 2024) ("This Court agrees with an overwhelming majority of courts holding that the crime-tort exception does not apply to the alleged interception itself; instead, 'a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording.'"); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) ("Plaintiffs' attempt to invoke the crime-tort exception, requiring them to plead sufficient facts to show that 'the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously,' does not apply to a case such as this, where Defendant's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money.'").

Second, Plaintiff has not stated a VPPA or FERPA violation at all, and those laws consequently cannot serve as a predicate crime or tort for purposes of her Wiretap Act claims. The VPPA is addressed above. With respect to FERPA, under FERPA, an education record is a record

"(1) Directly related to a student; and (2) Maintained by an educational agency or institution or by a party acting for the agency or institution." 34 CFR § 99.3. With respect to the first element, Plaintiff's complaint is devoid of allegations describing what information protected under FERPA was allegedly intercepted. Her complaint repeats the words "education record" over and over again, but Plaintiff never identifies the specific information at issue. (*See id.* ¶ 2, 8, 44, 52, 58, 59, 83, 84-86, 88, 119, 137). Simply saying an "education record" was disclosed is a legal conclusion that is not entitled to any presumption of truth in the absence of any factual allegations concerning *what* information was disclosed. With respect to the second element, Plaintiff does not allege the University "maintained" any of the information allegedly disclosed to third-party tracking technologies. "Maintain" means "to keep in an existing state (as of repair, efficiency, or validity): preserve from failure or decline." *See* Maintain (def. 1), https://www.merriam-webster.com/dictionary/maintain (last visited May 20, 2025). At most, Plaintiff suggests that the information shared with tracking technologies includes communications "entered into websites via website features like search bars or through URLs." (ECF No. 1 ¶ 58.) But Plaintiff has failed to establish that any information allegedly entered by Plaintiff into a search bar or URL is information that would be included in an education record "maintained" by the University. Her claim must fail.

**2. <u>The Information Was Not Intercepted "In Transit."</u>**

Plaintiff fails to allege that any information was intercepted "in transit" as opposed to merely acquired at some point by a third party. As one federal appellate court has explained, "[s]tanding alone, this definition [of 'intercept'] would seem to suggest that an individual 'intercepts' an electronic communication merely by 'acquiring' its contents, regardless of when or under what circumstances the acquisition occurs. Courts, however, have clarified that Congress intended a narrower definition of 'intercept' with regard to electronic communications." *Konop v.*

*Hawaiian Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir. 2002). Therefore, "for a website such as [defendant's] to be 'intercepted' in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage" because "[t]his conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'" *Konop*, 302 F.3d at 878 (citing Webster's Ninth New Collegiate Dictionary 630 (1985); *see also Steve Jackson Games, Inc. v. U.S. Secret Service*, 36 F.3d 457, 462 (5th Cir. 1994) ("Congress did not intend for 'intercept' to apply to 'electronic communications' when those communications are in 'electronic storage.'").

Plaintiff fails to allege the communications allegedly being shared with any third parties through use of the tracking technologies were intercepted *in transit* by any third party. Rather, Plaintiff simply alleges the information is "captured" and "shared" with third parties. (*See, e.g.*, ECF No. 1 ¶ 47 ("Defendant shares information with Google); *id.* ¶ 32 ("Once this record is received, Facebook processes it, analyzes it, and assimilates it into datasets like the Core Audiences and Custom Audiences.") These allegations show that third parties are not actively intercepting or viewing the communications as they are in transit, as required to allege a Wiretap claim, but rather, they are being stored by the tracking technologies to access at their leisure to use in marketing efforts. *See Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552 at *1 (N.D. Cal. Jan. 25, 2022) ("plaintiff failed to allege sufficient allegations where '[p]laintiffs reference an 'open line of communication,' and 'real-time ad bidding' in support of [their] theory, but neither describes how Google actually intercepts data in real time.'"). Because "acquiring" or "capturing" information for later use by a third party does not constitute "interception" as defined under the Wiretap Act, Plaintiff's Wiretap claim must be dismissed.

### D. Plaintiff Fails to Plead a Violation of the Illinois Eavesdropping[5] Act.

Plaintiff alleges the University violated Section 14-2(a)(3) of the IEA, 720 ILCS 5/14 *et seq.*, which provides that a person intentionally commits eavesdropping when the person "knowingly and intentionally . . . [i]ntercepts, records, or transcribes, in a surreptitious manner, any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication." But this subsection only applies to nonparties to a private electronic communication. And even if the Court were to somehow find that the University was not a party to communications on its website, Plaintiff has not pled compensable damages, a required element of her claim.

First, Section 14-2(a)(3) on its face only applies where the defendant "is not a party" to the communication. 720 ILCS 5/14-2(a)(3). *Zak v. Bose*, No. 17-xv-02928, 2019 WL 1437909 (N.D. Ill. Mar. 31, 2019) addressed an analogous claim in the context of the tracking of online information. *Id.* at *6-7. The plaintiff in *Zak* alleged the defendant tracked information input into the defendant's mobile application. The Court dismissed the plaintiff's IEA claim under 720 ILCS 5/14-2(a)(3), holding that "the relevant provision of the Eavesdropping Statute only applies where a person 'is not a party' to the private electronic communication. As discussed above, the FAC does not allege facts to suggest that [defendant's mobile application] is not a party to the communication, and indeed the facts alleged contradict [plaintiff's] conclusory allegation that [defendant] is not a party." *Id.*

Plaintiff's claim relates to communications on the University's website, which she defines

[5] Plaintiff alleges the University is an eavesdropper, (ECF No. 1 ¶ 139), but "eavesdropper" does not appear in the section under which Plaintiff brings suit, 720 ILCS 5/14-2(a)(3). Further, an "eavesdropper" "is any person, including any law enforcement officer and any party to a private conversation," and a "private conversation" is defined as "any ***oral*** communication between 2 or more persons . . . ." 720 ILCS 5/14-1 (emphasis added). The University cannot be an eavesdropper where Plaintiff has alleged no oral communication.

as "phoenix.edu." (ECF No. 1 ("Compl."), ¶ 2). But her claim is based on a theory of liability which requires the University to be a non-party, and her allegations do not support that conclusion. She alleges "as a result of Defendant procuring numerous third parties to ***intercept the Website communications*** of Plaintiff and Class members, each time ***Plaintiff and Class members used the Website***, the third parties intercepted and obtained Plaintiff's and Class members' education records and the information contained therein without consent." (*Id.* ¶ 88). It is clear that Plaintiff made communications on the University's website, but she skirts around identifying the other party to her communications, the University, because her theory of liability fails if the University is a party to her communications. 720 ILCS 5/14-2(a)(3). Instead, she claims that the University is a non-party principal who facilitated an interception. (ECF No. 1. ¶¶ 136, 139.). But this Court need not accept any unexplained and contradictory allegations as true. *Woodard v. Health Ins. All.*, No. 23 C 2630, 2024 WL 942629, at *2 (N.D. Ill. Mar. 5, 2024) ("Unexplained contradictory statements are afforded no weight in federal courts.") (citing *Atkins v. City of Chi.*, 631 F.3d 823, 831-32 (7th Cir. 2011) ("when a complaint is dismissed for failure to state a claim the reviewing court is to assume that the factual allegations made in the complaint (unless fantastic, or contradicted in the complaint itself or in documents attached to it) are true.")). Any alleged tracking is not a violation of the IEA because the allegedly intercepted communication was not with a third party; it was a communication to the University via the University's website.

Second, Plaintiff's claim fails for the independent reason that the IEA only applies if Plaintiff alleges "actual damages." Under 720 ILCS 5/14-6, a "plaintiff must prove he is entitled to damages in the same manner as he would in any common law tort action." *McDonald's v. Levine*, 439 N.E.2d 475, 480 (Ill. App. Ct. 1982). Plaintiff claims that the "unlawful conduct" has "injured Plaintiff," but she fails to allege any actual damages, only that she is entitled to "actual

and punitive damages." (ECF No. 1 ¶ 140). Accordingly, Plaintiff fails to allege actionable damages and her claim should be dismissed.

## III. CONCLUSION

For the foregoing reasons, Defendant The University of Phoenix, Inc. respectfully requests that the Court dismiss Plaintiff's Complaint, with prejudice.

Dated: June 5, 2025

Respectfully submitted,

BAKER & HOSTETLER LLP

By: */s/ Katharine H. Walton*
Joel C. Griswold (6277574)
Bonnie Keane DelGobbo (6309394)
Katharine H. Walton (6339805)
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 3700
Chicago, IL 60606-2859
Telephone: 312.416.6200
Facsimile: 312.416.6201
jcgrisold@bakerlaw.com
bdelgobbo@bakerlaw.com
kwalton@bakerlaw.com

*Attorneys for The University of Phoenix, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all Counsel of Record. I further certify that a true and correct copy of the foregoing document was served via certified mail on the following:

Pamela Bondi
Attorney General for the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

*/s/ Katharine H. Walton*