**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JANIELLE DAWSON, individually and on behalf of all others similarly situated, | ) | |
| Plaintiff, | ) | No.: 1:25-cv-03497 |
| v. | ) | |
| THE UNIVERSITY OF PHOENIX, INC., | ) | Hon. Mary M. Rowland |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..... ii

**INTRODUCTION** ..... 1

**ARGUMENT** ..... 2

I. Legal Standards ..... 2

II. Plaintiff Adequately States a Claim Under the VPPA ..... 3

A. Defendant Is a VTSP ..... 3

B. Plaintiff Is a Consumer ..... 5

C. Defendant Knowingly Disclosed Plaintiff's PII. ..... 6

D. The VPPA Does Not Require Actual Damages ..... 9

E. The VPPA Does Not Violate the First Amendment ..... 11

1. Intermediate Scrutiny Applies ..... 11

2. The VPPA Withstands Intermediate Scrutiny ..... 13

III. Plaintiff Sufficiently Alleges a Violation of the ECPA. ..... 14

A. Defendant Unlawfully Procured Others to Violate the ECPA ..... 15

B. Defendant Unlawfully Used and Endeavored to Use the Contents of Plaintiff's and Class Members' Electronic Communications ..... 18

C. Plaintiff Sufficiently Alleges that Plaintiff's and Class Members' Communications Were Intercepted "In Transit" ..... 19

IV. Plaintiff Sufficiently Alleges a Violation of the IEA ..... 21

A. Plaintiff Sufficiently Alleges Defendant's Liability as a Principal ..... 21

B. Plaintiff Seeks Proper Relief Under the IEA ..... 24

**CONCLUSION** ..... 25

# TABLE OF AUTHORITIES

## CASES

*Abbas v. Selling Source, LLC*, 2009 WL 4884471 (N.D. Ill. Dec. 14, 2009) ............13

*A.D. v. Aspen Dental Mngm't, Inc.*, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ............18, 20, 23

*Adams Outdoor Advert. Ltd. P'ship v. City of Madison, Wis.*, 56 F.4th 1111 (7th Cir. 2023) ............11

*Admin. Committee v. Alexander*, 2001 WL 32874 (N.D. Ill. Jan. 12, 2001) ............15, 17, 19

*ACLU v. Clearview AI, Inc.*, 2021 WL 4164452 (Ill. Cir. Ct. Aug. 27, 2021) ............12

*Ade v. Viki, Inc.*, 2024 WL 1880153 (N.D. Cal. Mar. 28, 2024) ............8

*Ainsworth v. Century Supply Co.*, 295 Ill.App.3d 644 (Ill. Ct. App. 1998) ............24, 25

*Barnhart v. Sigmon Coal, Co.*, 534 U.S. 438 (2002) ............17

*Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469 (1989) ............11

*Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579 (S.D.N.Y. 2016) ............13

*Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016) ............12

*Boseovski v. McCloud Healthcare Clinic, Inc.*, 2020 WL 68578 (E.D. Cal. Jan. 7, 2020) ............16

*Campos v. Tubi, Inc.*, 716 F. Supp. 3d 623 (N.D. Ill. 2024) ............9

*Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989 (S.D. Cal. 2023) ............4

*Carroll v. General Mills, Inc.*, 2023 WL 4361093 (C.D. Ca. Jun. 26, 2023) ............4

*Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of N.Y.*, 447 U.S. 557 (1980) ............11, 13

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61 (2022) ............13

*Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023) ............21

*Doe v. Chao*, 540 U.S. 614 (2004) ............10

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2852210 (N.D. Cal. June 4, 2024) ....................20, 21

*Doe v. Tenet Healthcare Corp.*, 2025 WL 1635956 (E.D. Cal. June 9, 2025) ....................21

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) ....................6, 9

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ....................11

*Fan v. NBA Props., Inc.*, 2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) ....................8

*Florida Bar v. Went For It, Inc.*, 515 U.S. 618 (1995) ....................13

*Frisby v. Schultz*, 487 U.S. 474 (1988) ....................13

*Giammanco v. Giammanco*, 253 Ill.App.3d 750 (Ill. Ct. App. 1993) ....................25

*Great Northern Ins. Co. v. Amazon.com, Inc.*,
2019 WL 3935038 (N.D. Ill. Aug. 20, 2019) ....................15, 17, 19

*IMDb.com Inc. v. Becerra*, 962 F.3d 1111 (9th Cir. 2020) ....................11

*In re Clearview AI, Inc., Consumer Priv. Litig.*,
585 F. Supp. 3d 1111 (N.D. Ill. 2022) ....................12, 14

*In re Facebook Inc. Cons. Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................3

*In re Hulu Priv. Litig.*, 2013 WL 6773794 (N.D. Cal. Dec. 20, 2013) ....................10

*In re Hulu Priv. Litig.*, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ....................8

*In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016) ....................6

*In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................20

*In Re: Zynga Priv. Litig.*, 2014 WL 1814029 (9th Cir. May 8, 2014) ....................8, 9

*Jackson v. Fandom Inc.*, 2023 WL 4672085 (N.D. Cal. July 20, 2023) ....................3, 8

*Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509 (7th Cir. 2014) ....................11

*Lee v. Plex, Inc.*, 2025 WL 948118 (N.D. Cal. Mar. 28, 2025) ....................8

*Lonegan v. Hasty*, 436 F. Supp. 2d 419 (E.D.N.Y. 2006) ....................16

*Manza v. Pesi, Inc.*, 2025 WL 1445762 (W.D. Wis. May 20, 2025) ....................4, 7

*Mayer v. Midwest Physician Admin. Svcs., LLC*,
2025 WL 963779 (N.D. Ill. Mar. 31, 2025)....................18

*McDonald's v. Levine*, 439 N.E.2d 475 (Ill. Ct. App. 1982)....................25

*Metromedia, Inc. v. San Diego*, 453 U.S. 490 (1981)....................13

*Narducci v. Moore,* 572 F.3d 313 (7th Cir. 2009) ....................15, 17, 19

*Nguyen v. Elsevier Inc.*, 2025 WL 1635679 (N.D. Cal. June 9, 2025)....................5

*Osheske v. Silver Cinemas Acquisition Co.*, 132 F.4th 1110 (9th Cir. 2025)....................5

*Peavy v. WFAA-TV, Inc.*, 221 F.3d 158 (5th Cir. 2000) ....................16

*Reed v. Palmer*, 906 F.3d 540 (7th Cir. 2018)....................2

*Rodriguez v. Delta T LLC*, 2023 WL 9419152 (C.D. Cal. Dec. 12, 2023)....................4

*Rodriguez v. Google LLC*, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)....................21

*Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024) ....................3

*Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24 (D. Mass. 2024) .................... *passim*

*Sellers v. Bleacher Report, Inc.*, 2023 WL 4850180 (N.D. Cal. July 28, 2023)....................4, 9

*Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025) ....................21

*Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175 (D. Nev. 2022)....................10

*Smith v. Findlay Auto., Inc.*, 2025 WL 973859 (D. Nev. Mar. 31, 2025) ....................10

*Smith v. Loyola Univ. Med. Ctr.*, 2024 WL 3338941 (N.D. Ill. Jul. 9, 2024) ....................18

*Solomon v. Flipps Media, Inc.*, 2025 WL 1256641 (2d Cir. May 1, 2025)....................6

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) ....................12

*Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859 (N.D. Ill. 2022)....................12, 13

*Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841 (N.D. Cal. 2022)....................8, 12

*Trantham v. Socoper, Inc.*, 2022 WL 902730 (N.D. Ala. Mar. 28, 2022)....................10

*Valentine v. Wideopen West Finance, LLC*, 288 F.R.D. 407 (N.D. Ill. 2012)..............................16

*Vasil v. Kiip*, 2018 WL 1156328 (N.D. Ill. Mar. 5, 2018)..........................................................23

*Vesuvius USA Corp. v. Am. Comm'l Lines LLC*, 910 F.3d 331, 334-35 (7th Cir. 2018)............2, 3

*Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927 (7th Cir. 1998)..................................15, 17, 19

*Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482 (1st Cir. 2016).............................6

*Zak v. Bose*, 2019 WL 1437099 (N.D. Ill. Mar. 31, 2019)...................................................23, 24

**STATUTES**

***Federal***

5 U.S.C. § 552a.......................................................................................................................10

18 U.S.C. § 2510.........................................................................................................................1

18 U.S.C. § 2511...........................................................................................................15, 17, 18

18 U.S.C. § 2520...................................................................................................................15, 16

18 U.S.C. § 2710.................................................................................................................*passim*

***State***

720 Ill. Comp. Stat. 5/1...............................................................................................................1

720 Ill. Comp. Stat. 5/14-1.....................................................................................................22, 24

720 Ill. Comp. Stat. 5/14-2.......................................................................................21, 22, 23, 24

720 Ill. Comp. State 5/14-6.......................................................................................21, 22, 23, 24

**LEGISLATIVE HISTORY**

S. Rep. 100-599.......................................................................................................................13, 14

**OTHER AUTHORITIES**

https://www.phoenix.edu/copyright-legal/terms-conditions.html..................................................6

## INTRODUCTION

This case arises out of the use of third-party tracking technologies—including those of Meta Platforms , Inc., formerly known as Facebook, Inc. ("Facebook"); Google LLC ("Google"); LinkedIn Corporation ("LinkedIn"); ByteDance, also known as TikTok, Microsoft Corporation ("Microsoft"); and Amazon.com, Inc. ("Amazon") (together "Third-Party Tracking Companies")—on the website (the "Website") of Defendant The University of Phoenix, Inc. ("Defendant"). Plaintiff Janielle Dawson ("Plaintiff") alleges Defendant disclosed data about Plaintiff's and Class members' identities and video-watching behavior to the Third-Party Tracking Companies without their consent, and contemporaneously enabled the Third-Party Tracking Companies to intercept Plaintiff's and class members' confidential communications via the Website.

As alleged in the Complaint, Plaintiff purchased and enrolled in a degree program at the University of Phoenix, an online education institution owned and operated by Defendant. In connection therewith, Plaintiff purchased and enrolled in numerous courses that included prerecorded videos that she watched. Unbeknownst to Plaintiff, Defendant, through its implementation and use of the third-party tracking technologies, disclosed her personally identifiable information in the form of her video-watching behavior ("PII"), and enabled the Third-Party Tracking Companies to intercept her electronic communications via the Website. Plaintiff alleges Defendant's conduct violated the: (a) Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710; (b) Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq.*; and (c) Illinois Eavesdropping Act, 720 Ill. Comp. Stat. 5/1, *et seq.*

Defendant makes sundry meritless attacks on Plaintiff's claims. With respect to the VPPA claim, contrary to Defendant's contention: (a) Defendant is a "video tape service provider"

("VTSP"); (b) Plaintiff and class members are "consumers" under the VPPA; and (c) Defendant disclosed Plaintiff's and Class members' PII. Moreover, as many courts have held, the VPPA does not require a plaintiff to have suffered actual damages and does not violate the First Amendment.

Defendant's attacks on Plaintiff's ECPA claim are also misplaced. Plaintiff alleges Defendant unlawfully procured the Third-Party Tracking Companies to intercept Plaintiff's and Class members' electronic communications and then unlawfully used those intercepted communications. Defendant does not address Plaintiff's liability theories and has waived and/or forfeited any such arguments. Instead, Defendant focuses on the party-exemption to liability under the ECPA, even though that exemption does not apply to procurers and users of intercepted communications. Defendant's additional contention that the Third-Party Tracking Companies did not intercept Plaintiff's and Class members' communications "in transit" ignores Plaintiff's allegations of contemporaneous, real-time interception of the communications by the third parties.

Defendant's grounds for dismissing Plaintiff's IEA claim are equally misplaced. Under the IEA, Defendant acted as the principal of the Third-Party Tracking Companies. Further, under the IEA, an eavesdropping victim can hold both the principal and the eavesdropper (here, the third parties) accountable. Defendant's secondary argument that dismissal is required because Plaintiff fails to allege actual damages fails because Plaintiff: (a) seeks injunctive relief and punitive damages, in addition to actual damages; and (b) has sufficiently alleged actual damages.

Based on the foregoing, the Court should deny Defendant's motion in its entirety.

## ARGUMENT

### I. Legal Standards.

"[P]laintiffs' complaints . . . are taken as true and considered in the light most favorable to plaintiffs on a Rule 12(b)(6) motion to dismiss." *Reed v. Palmer*, 906 F.3d 540, 549 (7th Cir. 2018). At this stage, "a court must draw all reasonable inferences in favor of the non-moving

party." *Vesuvius USA Corp. v. Am. Comm'l Lines LLC*, 910 F.3d 331, 334-35 (7th Cir. 2018).

## II. Plaintiff Adequately States a Claim Under the VPPA.

### A. Defendant Is a VTSP.

Defendant argues it is not a VTSP because it "[m]erely utilize[es] videos as a means of conveying course content . . . ." Dkt. 20 at 11.[1] That is incorrect. Defendant constitutes a VTSP for purposes of the VPPA because it sells videos as a core part of its business. It does not merely provide them to the public for free as part of its marketing efforts.

The VPPA defines VTSP to mean "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials . . . ." 18 U.S.C. § 2710(a)(4). Courts have made clear that this definition "is broad" and "is not limited to entities that deal exclusively in audiovisual content; rather, audiovisual content need only be *part* of the provider's book of business." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 548 (2d Cir. 2024) (original emphasis). Indeed, "Congress cast a wide net in defining 'video tape service provider,' to ensure that businesses dealing in audiovisual goods or services satisfy the definition even if they *also* deal in non-audiovisual goods or services." *Id.* (original emphasis). Allegations that a defendant regularly delivers video content to its users are sufficient to plead the defendant is a VTSP. *See In re Facebook Inc. Cons. Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019); *see also Jackson v. Fandom Inc.*, 2023 WL 4672085, at *3 (N.D. Cal. July 20, 2023) (the operator of a website that hosts prerecorded streaming video content qualifies as a VTSP).

Here, Plaintiff sufficiently alleges Defendant is a VTSP. Defendant is an online university that "sells degree programs and single courses." Dkt. 1 ¶ 73. It provides many of those programs

[1] Citations to page numbers of docketed entries are to the CM/ECF-stamped page numbers.

and courses in the form of prerecorded video lectures. *Id.* In other words, a substantial part of Defendant's business model is the sale of video material. *Id.* ¶ 99 ("Defendant delivers and sells prerecorded videos to University of Phoenix students"). That is sufficient for Defendant to constitute a VTSP under the VPPA. *See, e.g.*, *Manza v. Pesi, Inc.*, 2025 WL 1445762, at *1 (W.D. Wis. May 20, 2025) ("A primary feature of Pesi's website is the sale of prerecorded video courses and seminars on various healthcare topics.").

Despite these clear allegations, Defendant argues it is not a VTSP because it is "[m]erely utilizing videos as one means of conveying course content . . . ." Dkt. 20 at 11. This characterization contradicts not only the allegations in the Complaint, which must be accepted as true at this stage, but also common sense: as an online university, video courses are part of the core product that Defendant is in the business of selling. Moreover, Defendant's argument "raises factual questions about the degree to which [its] business model is tailored to delivery of audio visual materials," making the argument premature at the motion to dismiss stage. *See Sellers v. Bleacher Report, Inc.*, 2023 WL 4850180, at *6 (N.D. Cal. July 28, 2023).

Defendant's authorities (Dkt. 20 at 11) are all easily distinguished because they involved companies primarily involved in non-video related businesses that used videos exclusively for marketing purposes. For instance, in *Carroll v. General Mills, Inc.*, 2023 WL 4361093, at *3-4 (C.D. Ca. Jun. 26, 2023), the court held that General Mills was not a VTSP because its core business was selling cereal and other foods, not videos. *Id.* Likewise, in *Rodriguez v. Delta T LLC*, 2023 WL 9419152, at *4 (C.D. Cal. Dec. 12, 2023), the court held that a ceiling fan company that used videos as a "marketing tool to promote those products" was not a VTSP. And in *Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989, 994 (S.D. Cal. 2023), the court held that the owner of Coach was not a VTSP because it used videos solely "for marketing purposes."

Unlike the above-described defendants, Defendant, here, is an online university whose core business is selling video courses online. Dkt. 1 ¶¶ 73, 99. Defendant does not use the videos at issue to market its other products. Rather, the videos ***are*** its products. As such, Plaintiff adequately alleges Defendant is a VTSP. *See Nguyen v. Elsevier Inc.*, 2025 WL 1635679, at *3 (N.D. Cal. June 9, 2025) ("While the defendants in . . . *Tapestry, Inc.* and *Carroll* used their videos in a peripheral role . . . Plaintiffs plausibly allege Osmosis is *significantly tailored* to providing an interactive learning website centered around its library of thousands of healthcare-related videos, video transcripts, and interactive activities for subscribers to utilize. . . . As such, the central focus of this Elsevier product can be plausibly inferred to act as a video-based learning platform that actively delivers video content to subscribers . . . .") (cleaned up; original emphasis).[2]

**B. Plaintiff Is a Consumer.**

Ignoring Plaintiff's allegations, Defendant argues Plaintiff is not a consumer under the VPPA because a student does not "purchase" anything, they merely "enroll" and "attend." Dkt. 20 at 12. But Plaintiff alleges she purchased and enrolled in a degree program, as well as numerous courses, at the University of Phoenix. Dkt. 1 ¶ 4; *id.* ¶ 5 ("Plaintiff purchased goods and services from Defendant in the form of class courses"); *id.* ¶ 75 (providing an example of "when a student purchases a class regarding QuickBooks"); *id.* ¶ 102 ("Plaintiff and the Class members purchased and enrolled in degree programs and courses via the Website . . . ."). These "class courses routinely included prerecorded videos . . . ." *Id.* ¶ 7. It is likewise absurd for Defendant to suggest it does not sell video courses, or that those courses are not purchased by students. *See* Dkt. 20 at 12.

---

[2] Defendant also cites to *Osheske v. Silver Cinemas Acquisition Co.*, 132 F.4th 1110 (9th Cir. 2025). There, the court held that a movie theater was not a VTSP because "theater patrons do not obtain the control over audiovisual materials available to prerecorded video viewers," such as the power to rewind or pause a video. *Id.* at 113. That logic is unavailing to Defendant; students at the University of Phoenix have control over the video courses they purchase. In addition, unlike movies shown in a theater, Defendant's pre-recorded video courses are not provided in a "publicly accessible site[] of shared synchronous viewing." *Id.* at 114.

Defendant is a private, for-profit university whose business model is the selling of those courses.

And those video courses are goods and/or services. As Defendant notes, the definition of a "good" is "something manufactured or produced for sale." Dkt. 20 at 12. That perfectly describes the video courses at issue here, which Defendant clearly manufactured and produced. Likewise, education is commonly referred to as a service, including by Defendant itself. *See, e.g.*, https://www.phoenix.edu/copyright-legal/terms-conditions.html (referring to Defendant's "Services").

**C. Defendant Knowingly Disclosed Plaintiff's PII.**

Applying the incorrect standard for what constitutes a knowing disclosure of PII under the VPPA, Defendant argues Plaintiff fails to adequately plead Defendant knowingly disclosed her PII because she does not allege the University provided third parties with information that would "readily permit an ordinary person to identify a specific individual's video-watching behavior." Dkt. 20 at 14. That is incorrect.

The VPPA states that "personally identifiable information *includes* information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3) (emphasis added). Courts are split on how to interpret this provision. The Third, Ninth and Second Circuits have adopted an "ordinary person" standard. *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 284 (3d Cir. 2016); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017); *Solomon v. Flipps Media, Inc.*, 2025 WL 1256641, at *9 (2d Cir. May 1, 2025). Under that test, courts ask whether the information disclosed "readily permits an ordinary person to identify a particular individual as having watched certain videos." *Eichenberger*, 876 F.3d at 985. By contrast, the First Circuit, asks whether the "information reasonably and foreseeably [is] likely to reveal which" videos the customer acquired. *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016).

"The Court of Appeals for the Seventh Circuit has not considered the meaning of PII under the VPPA." *Manza*, 2025 WL 1445762, at *4. In *Manza*—the one case in this Circuit to address the issue—the court expressly rejected the "ordinary person" standard and adopted one that aligns with the First Circuit's. In reaching its holding, the court stated that the "the inclusion of the suffix 'able' in 'personally identifiable information' implies that" the VPPA applies to information that "*can be used* to identify a person, not just that it identifies a person on its own." *Id.* at *4 (original emphasis). The court also looked to the statutory language to determine who must be capable of identifying a consumer's video-viewing history. *Id.* at 5. The court noted that "use of the word 'includes' in the provision of PII supports a broad reading of the term" because that word is "typically illustrative and not limitative." *Id.* (citation omitted).

The key then, according to the court in *Manza*, is not who is doing the identifying, but rather whether the VTSP "*knows* that the information can be used by a third party to identify a specific person." *Id.* (original emphasis). Accordingly, "information that uniquely identifies a customer to a third party can qualify as PII, regardless of whether the third party is an 'ordinary person' or a social media company." *See id.* "So disclosures of a customer's video purchases paired with an ID number can qualify as PII." *Id.*

According to the court in *Manza*, the "ordinary person" standard, meanwhile, is supported by "little textual basis" and is merely a "judicial construct." *Id.* at *5, *9. Nor is it supported by the legislative history, which points to the creation of broad protections for individual's video-watching data and makes no reference to an "ordinary person" standard. *Id.* In addition, the "ordinary person" standard is problematic because it "creates a substantial loophole in the VPPA's coverage and allows easy evasion." *Id.* at *8.

This Court should adopt the sound reasoning of the court in *Manza* and find that Defendant

knowingly disclosed Plaintiff's PII because: (a) this case involves the identification of users through the Facebook Tracking Pixel (also known as the Meta Pixel) and other similar trackers; and (b) "ID numbers uniquely associated with a specific customer qualify as PII under the VPPA when they are paired with the names of videos the customer obtained from the defendant." *Id.* at *9. Indeed, Plaintiff alleges Defendant sent Facebook data regarding her video-watching behavior alongside her Facebook ID number. Dkt. 1 ¶¶ 74-80; *see also id.* ¶¶ 8, 36-72, 82-84 (similar allegations regarding LinkedIn, Microsoft, Google, TikTok and Amazon). Because this data can be used by technology companies to identify customers and what videos they accessed, the data constitutes PII under the VPPA. Defendant's disclosure of that data violated the VPPA.

The conclusion is the same under the "ordinary person" standard. Courts routinely hold that a Facebook ID is PII "under the Ninth Circuit's 'ordinary person' standard" because it "uniquely identifies an individual's Facebook account . . . which generally contains a wide range of demographic and other information . . . ." *Ade v. Viki, Inc.*, 2024 WL 1880153 (N.D. Cal. Mar. 28, 2024); *Lee v. Plex, Inc.*, 2025 WL 948118, at *10 (N.D. Cal. Mar. 28, 2025) ("Consistent with the great weight of authority, this Court agrees that a Facebook ID is personally identifiable information for purposes of the VPPA . . . ."); *Fan v. NBA Props., Inc.*, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024) (plaintiff plausibly alleged that a Facebook ID is PII because it "allows anybody" to identify a person associated with a Facebook profile and "all personal information publicly listed on that profile.") (citation omitted); *Jackson*, 2023 WL 4670285, at *4 (similar); *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 853 (N.D. Cal. 2022) (similar); *In re Hulu Priv. Litig.*, 2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014) ("The Facebook User ID is more than a unique, anonymous identifier. It personally identifies a Facebook user."); *In Re: Zynga Priv. Litig.*, 2014 WL 1814029, at *9 (9th Cir. May 8, 2014) (Facebook ID is personally identifiable

information under the ECPA).

*Eichenberger*, relied on by Defendant (Dkt. 20 at 13-14), is distinguishable. There, the information disclosed was not a Facebook ID, but merely a Roku device serial number, which the court found "cannot identify an individual unless it is combined with other data in [the recipient's] possession—data that [defendant] never disclosed and apparently never even possessed." 876 F.3d at 986 (Dkt. 20 at 19) (original emphasis). Unlike a Roku serial number, a Facebook ID does not need to be combined with other data or information that is solely in the possession of Meta or other companies. Rather, any person with an internet connection could identify Plaintiff with her Facebook ID by entering it at the end of the URL facebook.com in a web browser. *See* Dkt. 1 ¶ 79. Notably, Plaintiff alleges that her Facebook page is linked to her first name, last name, birthday and gender. *Id.* ¶ 26.

Defendant adds that "Plaintiff does not plausibly allege the University *knowingly* disclosed PII to third parties." Dkt. 20 at 15. But Plaintiff alleges that "Defendant knowingly disclosed Plaintiff's PII and video-watching behavior because it knowingly installed the Facebook Tracking Pixel on the Website, and configured the Facebook Tracking Pixel to integrate with the Adobe Analytics platform." Dkt. 20 ¶ 103. That is sufficient. *See, e.g.*, *Sellers*, 2023 WL 4850180, at *5 (allegations that defendant "deliberately installed the Facebook pixel on its website" were "enough for the court to reasonably infer that defendant knowingly discloses personally identifying information."); *Campos v. Tubi, Inc.*, 716 F. Supp. 3d 623, 639 (N.D. Ill. 2024) ("That Tubi knowingly disclosed the relevant combination of information to its advertising partners, in contravention of the VPPA, is a plausible inference based on the Privacy Policy, in tandem with the other facts that Campos has alleged and that the Court must take as true.").

**D. The VPPA Does Not Require Actual Damages.**

Defendant argues Plaintiff is not entitled to statutory damages under the VPPA because

she "has not alleged any actual damages." Dkt. 20 at 15-16. However, as other courts have found, "the text of the VPPA does not condition recovery on proof of actual damages." *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 31 (D. Mass. 2024); *In re Hulu Priv. Litig.*, 2013 WL 6773794, at *7 (N.D. Cal. Dec. 20, 2013) (actual injury not a prerequisite to damages).

*Doe v. Chao*, 540 U.S. 614 (2004), relied on by Defendant (Dkt. 20 at 16), is distinguishable. The court in *Saunders* explained why:

> In *Doe v. Chao*, . . . Doe argued that the Privacy Act of 1974, 5 U.S.C. § 552a, did not require proof of actual damages. The Privacy Act provides that if the United States violates a provision of the statute, it "shall be liable to the individual in an amount equal to the sum of actual damages sustained by the individual as a result of the [violation], but in no case shall a person entitled to recovery receive less than the sum of $1,000." 5 U.S.C. § 552a(g)(4). The Court concluded that Doe needed to prove actual damages to prevail on a Privacy Act claim. *Chao*, 540 U.S. at 620, 124 S.Ct. 1204. But in doing so, it noted that if Congress wished to allow recovery of liquidated damages for violations of the Privacy Act absent actual damages, it could have made the statute read "the Government would be liable to the individual for actual damages 'but in no case ... less than the sum of $1,000.'" *Id.* at 623, 124 S.Ct. 1204 (alteration in original). That is nearly exactly how the VPPA is styled. *See* 18 U.S.C. § 2710(c)(2)(A) ("The court may award actual damages but not less than liquidated damages in an amount of $2,500.").

711 F. Supp. at 32; *In re Hulu Priv. Litig.*, 2013 WL 6773794, at *10 (noting that Supreme Court in *Chao* "held that the 'entitled to recovery' phrase was a critical limiting phrase").

Regardless, if necessary, Plaintiff can amend to allege she sustained actual damages because Defendant's privacy violation can be assigned some pecuniary value. *See, e.g.*, *Trantham v. Socoper, Inc.*, 2022 WL 902730, at *19 (N.D. Ala. Mar. 28, 2022) (referencing a "$200,000 award" for a claim of invasion of privacy). Likewise, the data at issue has value, and its improper disclosure thus deprived Plaintiff of a potential revenue stream. *See, e.g.*, *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1191 (D. Nev. 2022) (finding diminished value of PII to be a cognizable theory of damages); *Smith v. Findlay Auto., Inc.*, 2025 WL 973859, at *3 (D. Nev. Mar. 31, 2025) (alleged impairment in value of PII was a compensable injury).

**E. The VPPA Does Not Violate the First Amendment.**

Defendant argues that the VPPA violates the First Amendment. Dkt. 20 at 17-22. Not so. As every court addressing this issue has found, the VPPA "regulate[s] data collection and disclosure without implicating the First Amendment." *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1124 (9th Cir. 2020) (internal quotation marks omitted); *Saunders*, 711 F. Supp. 3d at 33 ("This conclusion is bolstered by the fact that the court is aware of no cases in any circuit . . . holding that the VPPA violates the First Amendment."). This Court should follow suit.

**1. Intermediate Scrutiny Applies.**

Intermediate scrutiny applies to Defendant's First Amendment challenge because the VPPA restricts commercial speech. *Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011) (citing *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477 (1989)); *Adams Outdoor Advert. Ltd. P'ship v. City of Madison, Wis.*, 56 F.4th 1111, 1120 (7th Cir. 2023) (citing *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of N.Y.*, 447 U.S. 557, 561 (1980), "which adopted an intermediate standard of scrutiny for regulations on commercial speech"). A key factor in determining whether speech is commercial in nature is whether "the speaker has an economic motivation for the speech." *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 516 (7th Cir. 2014).

Here, Defendant's motivation for disclosing its users' video data to third-parties like Facebook is purely economic. Defendant's sole reason for using the Facebook Tracking Pixel and other tracking technologies is to help it target specific users on social media sites with its advertisements. Dkt. 1 ¶¶ 33, 43, 56, 63. The purpose of those advertisements is to attract more students who will pay tuition fees and generate more profits for Defendant. *See id.*

Notably, Defendant does not appear to challenge that the VPPA regulates its commercial speech. Nor could it, as courts have uniformly held that the VPPA and analogous statutes regulate commercial speech. *Saunders*, 711 F. Supp. 3d at 33 ("Hearst's disclosure of PII to third parties is

commercial speech."); *Stark*, 656 F. Supp. 3d at 1030 (considering a First Amendment challenge to the VPPA as a restriction on commercial speech); *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 445-446 (S.D.N.Y. 2016) (disclosing identities of individuals who purchase products covered by state analog of VPPA is commercial speech); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563-65 (2011) (analyzing restrictions on the "sale, disclosure, and use of prescriber-identifying information" within commercial speech framework).

Intermediate scrutiny also applies because the VPPA's restrictions are content neutral in that the statute does not concern itself with the message being communicated. For instance, the VPPA does not prohibit VTSPs from disclosing data related to only certain types of videos, such as pornography or certain political view. Rather, it restricts the disclosure of video-related information across the board. *See Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 880 (N.D. Ill. 2022) ("If BIPA regulated the use of, for example, face geometry scans of people yelling but not the face geometry scans of people smiling, that could be a content-based regulation, but 'BIPA does nothing of the sort.'") (quoting *ACLU v. Clearview AI, Inc.*, 2021 WL 4164452, at *1, *5 (Ill. Cir. Ct. Aug. 27, 2021) (rejecting defendant's argument "that BIPA is content-based because it targets specific content—biometric information such as faceprints, but not other content such as photos"); *see also In re Clearview AI, Inc., Consumer Priv. Litig.*, 585 F. Supp. 3d 1111, 1121 (N.D. Ill. 2022) ("BIPA, including its exceptions, does not restrict a particular viewpoint nor target public discussion of an entire topic . . . .").

But even if the restrictions of speech in the VPPA could be considered content-based, intermediate scrutiny would still apply because the regulated speech is commercial in nature. *Stark*, 656 F. Supp. 3d at 1032 ("Even where a restriction is content-based, it is subject to lesser scrutiny when the speech at issue falls within 'select categories of speech' including commercial speech.");

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 73 (2022) (noting that in *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 503-12 (1981), the Supreme Court "did not need to decide whether [an] off-premises prohibition was content based, as it regulated only commercial speech and so was subject to intermediate scrutiny in any event").

**2. The VPPA Withstands Intermediate Scrutiny.**

If the commercial speech at issue concerns lawful activity and is not misleading, it may be regulated if the government: (a) "assert[s] a substantial interest in support of its regulation"; (b) "demonstrate[s] that the restriction on commercial speech directly and materially advances that interest"; and (c) the regulation is "narrowly drawn." *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 624 (1995) (quoting *Central. Hudson Gas & Elec. Corp.*, 447 U.S. at 557, 564-65). Here, the VPPA meets each of these elements.

"First, Congress's interest in enacting the VPPA was to 'preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials.'" *Saunders*, 711 F. Supp. 3d at 33 (quoting S. Rep. 100-599 at 1). Indeed, "[t]he Supreme Court has repeatedly recognized the sanctity of personal privacy." *Id.* (citing *Florida Bar*, 515 U.S. at 625; *Frisby v. Schultz*, 487 U.S. 474, 483-85 (1988)); *see also Abbas v. Selling Source, LLC*, 2009 WL 4884471, at *7-8 (N.D. Ill. Dec. 14, 2009) (protecting consumer privacy is a substantial government interest); *Sosa*, 600 F. Supp. 3d at 882 ("Illinois has a substantial interest in protecting consumers, and more specifically, protecting their privacy in and control over their biometric data."); *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 599 (S.D.N.Y. 2016) (the government's "interest in protecting consumer privacy is a substantial one").

Second, the VPPA directly advances the government's interest in protecting consumer privacy related to the rental, purchase or delivery of video material. In restricting VTSPs from disclosing their customers' PII, Congress prohibited precisely the kind of privacy violations it

aimed to protect. What videos someone watches is not anyone's business but their own. While the VTSP will necessarily have access to the information as the provider of the videos, Congress wanted to prevent such companies from sharing that data with others. S. Rep. 100-599, at 5-6 ("It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home . . . . I think that really is Big Brother, and I think it is something that we have to guard against."). That is precisely what the VPPA does. And because Congress was specifically interested in protecting consumer privacy related to videos, the VPPA is not underinclusive. *See id.*

"Finally, the VPPA is narrowly drawn because it applies only to a narrow group of business entities and specific group of consumers." *Saunders*, 711 F. Supp. 3d at 33 ("The court is satisfied that the 'fit' between Congress's goal of protecting privacy in this realm and its means to do so is at least reasonable."). Notably, the VPPA also contains exceptions. For instance, VTSPs like Defendant are permitted to disclose PII to third parties so long as they obtain consent first. 18 U.S.C. § 2710(b)(2)(B). Likewise, the VPPA allows for the disclosure of PII to the consumer, to law enforcement or pursuant to a court order, to anyone if limited to names and addresses, or to anyone if made in the ordinary course of business, such as for debt collection or order fulfillment purposes. 18 U.S.C. § 2710(b)(2). Thus, the VPPA is neither under- nor over-inclusive. It protects consumers' privacy interests but is sufficiently tailored to permit disclosure when justified. *In re Clearview AI, Inc., Consumer Priv. Litig.*, 585 F. Supp. 3d at 1121 ("BIPA is narrowly tailored by legitimately protecting Illinois residents' highly sensitive biometric information and data, yet allowing residents to share their biometric information through its consent provision.").

## III. Plaintiff Sufficiently Alleges a Violation of the ECPA.

Defendant seeks dismissal of Plaintiff's ECPA claim on the grounds that: (a) Defendant

was a party to the communications at issue, and the ECPA's crime-tort exception does not apply; and (b) the communications at issue were not intercepted "in transit." Dkt. 20 at 22-28. Defendant's arguments lack merit.

**A. Defendant Unlawfully Procured Others to Violate the ECPA.**

Plaintiff alleges Defendant violated the ECPA by, *inter alia*, "intentionally procur[ing] various third parties, including the Third-Party Tracking Companies, to intercept and endeavor to intercept the electronic communications of Plaintiff and Class members . . . ." Dkt. 1 ¶ 119; *see also id.* ¶ 121 ("Defendant knew and had reason to know that it procured the third parties to intercept the electronic communications at issue and used the fruits thereof in violation of the ECPA"). Defendant does not address these express allegations or otherwise argue it is not liable under the ECPA for unlawfully procuring others to intercept and/or endeavor to intercept Plaintiff's and Class members' electronic communications. As such, Defendant has waived and/or forfeited the argument. *Admin. Committee v. Alexander*, 2001 WL 32874, at *5 (N.D. Ill. Jan. 12, 2001) ("Because defendants did not raise the collateral estoppel argument in their opening brief, the Court deems the argument waived . . . ."); *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927, 930 n.4 (7th Cir. 1998) (same); *Great Northern Ins. Co. v. Amazon.com, Inc.*, 2019 WL 3935038, at *4 (N.D. Ill. Aug. 20, 2019) ("Those arguments, made for the first time in Amazon's reply brief, are forfeited . . . ."); *Narducci v. Moore,* 572 F.3d 313, 324 (7th Cir. 2009) (same).

Absent waiver, any argument that Plaintiff fails to allege Defendant's unlawful procurement of another to intercept Plaintiff's and Class members' electronic communications fails. The ECPA provides for liability against anyone who "intentionally intercepts, endeavors to intercept, or *procures another person to intercept or endeavor to intercept* any . . . electronic communication." 18 U.S.C. § 2511(1)(a) (emphasis added). The ECPA further provides that a

person whose "electronic communication is intercepted, disclosed, or intentionally used" in violation of the ECPA may bring a civil action against the entity that engaged in the violation. *See* 18 U.S.C. § 2520.

Here, Plaintiff alleges Defendant violated the ECPA by procuring and endeavoring to procure numerous third parties, including the Third-Party Tracking Companies, to intercept the electronic communications of Plaintiff and Class members, namely, "the transmissions of the confidential and sensitive information of Plaintiff and Class members via the Website, including education records and the information contained therein, as well as their video-watching behavior." Dkt. 1 ¶ 119. Plaintiff's allegations are sufficient to state an ECPA violation.

Plaintiff recognizes that some courts have stated that the ECPA does not provide for civil liability against an entity that procures another to intercept communications. *See, e.g., Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000). However, courts that have more-closely examined the ECPA and its legislative history have held that the ECPA does, in fact, provide for such civil liability. *See Lonegan v. Hasty*, 436 F. Supp. 2d 419, 427-28 (E.D.N.Y. 2006); *Boseovski v. McCloud Healthcare Clinic, Inc.*, 2020 WL 68578, at *5-6 (E.D. Cal. Jan. 7, 2020); *Valentine v. Wideopen West Finance, LLC*, 288 F.R.D. 407, 412, n.3 (N.D. Ill. 2012). As the court in *Valentine* held, 18 U.S.C. § 2520 sets forth who may bring an action (*i.e.*, a person whose electronic communications were intercepted, disclosed or used) without limiting who may be sued as a defendant (*i.e.*, both the interceptor and the procurer of the interception may be sued). 288 F.R.D. at 412, n.3. "The procurer of an interception has indeed engaged in a violation of § 2511(1)(a), and may thus be sued by the person whose communication was intercepted." *Id.*; *see also Boseovski*, 2020 WL 68578, at *5-6 (discussing legislative history); *Lonegan*, 436 F.Supp.2d at 427-28.

Defendant does not contest that it procured third parties to unlawfully intercept Plaintiff's

and Class members' electronic communications. Given that § 2520 allows for a private right of action against those who engage in such conduct, the Court should deny Defendant's motion to dismiss Plaintiff's ECPA claim.

Importantly, the ECPA's exception to liability for parties to a communication, *see* 18 U.S.C. § 2511(2)(d), does not apply to a party that procures a third party to intercept a communication, and Defendant does not argue otherwise. Thus, Defendant has waived and/or forfeited any such argument. *See Admin. Committee*, 2001 WL 32874, at *5; *Walker*, 155 F.3d at 930 n.4; *Great Northern Ins. Co.*, 2019 WL 3935038, at *4; *Narducci,* 572 F.3d at 324. Absent waiver, the argument would fail because the exception only applies to the interception – not the procurement or use of relevant communications. *See* 18 U.S.C. § 2511(2)(d).

18 U.S.C. § 2511(2)(d) provides, in relevant part, that "[i]t shall not be unlawful . . . for a person . . . *to intercept* a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties has given prior consent to such interception . . . ." 18 U.S.C. § 2511(2)(d) (emphasis added). The statute provides no exemption for an entity that procures another to intercept a communication. *See id.*

"It is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal, Co.*, 534 U.S. 438, 452 (2002) (internal quotation marks and related citations omitted). Here, Congress: (a) expressly provided for liability for entities, like Defendant, that procure or endeavor to procure others to intercept communications, 18 U.S.C. § 2511(1)(a); but (b) omitted such entities from those exempted from liability under 18 U.S.C. § 2511(2)(d). It

follows that Congress acted "intentionally and purposely."[3]

The cases relied on by Defendant (Dkt. 20 at 23-24) are inapposite. Those cases address whether an entity is a party to a communication in the first instance and/or generically discuss the existence of the party exemption under 18 U.S.C. § 2511(2)(d). The cases do not address the exemption's inapplicability to an entity that procures a third party to intercept communications.

### B. Defendant Unlawfully Used and Endeavored to Use the Contents of Plaintiff's and Class Members' Electronic Communications.

Plaintiff also sufficiently alleges that Defendant violated the ECPA by using and endeavoring to use the contents of Plaintiff's and Class members' electronic communications to generate profits and increase revenues, knowing that the communications were unlawfully intercepted. *See* Dkt. 1 ¶ 120. Under the ECPA, it is unlawful for an entity to "intentionally use[], or endeavor[s] to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication" in violation of the ECPA. 18 U.S.C. § 2511(1)(d).

Here, Plaintiff expressly alleges Defendant's use and knowledge:

> In violation of the ECPA, 18 U.S.C. § 2511(1)(d), Defendant used, or endeavored to use, the contents of the electronic communications of Plaintiff and Class members to generate profits and increase revenues by, *inter alia*, attempting to

---

[3] Plaintiff does not dispute that Defendant was a party to the communications at issue or that 18 U.S.C. § 2511(2)(d) exempts from liability an entity that is a party to the communications at issue. However, Plaintiff does not allege Defendant violated the ECPA via its direct interception of Plaintiff's and Class members' communications. *See* Dkt. 1 ¶¶ 119-21 (alleging violations based on Defendant's procurement and use of intercepted communications). Thus, Defendant's discussion of the party-exemption and the crime-tort exception to the exemption (Dkt. 20 at 23-27) is inapposite. To the extent the Court determines Plaintiff cannot state claims for Defendant's unlawful procurement and use of Plaintiff's and Class members' electronic communications, Plaintiff seeks leave to amend in order to plead Defendant's unlawful interception of those communications based on the crime-tort exception to the party exemption. In short, based on Defendant's violations of the VPPA, IEA and the Federal Educational Rights and Privacy Act, 20 U.S.C. § 1232g, the crime-tort exception would apply in this case. *See, generally, A.D. v. Aspen Dental Mngm't, Inc.* ("*Aspen*"), 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024); *Smith v. Loyola Univ. Med. Ctr.*, 2024 WL 3338941, at *7 (N.D. Ill. Jul. 9, 2024); *Mayer v. Midwest Physician Admin. Svcs., LLC*, 2025 WL 963779, at *3 (N.D. Ill. Mar. 31, 2025).

> increase its enrollment through targeted advertising and improve its course offerings based on an analysis of the intercepted communications, knowing and having reason to know that the information was obtained through the unlawful interception of the electronic communications of Plaintiff and Class members, in violation of the ECPA, as alleged herein.

Dkt. 1 ¶ 120; *see also id.* ¶¶ 30-31 (surreptitious and secret nature of interceptions), ¶ 84 (Defendant used intercepted communications to "generate increased profits by way of, *inter alia*, (a) targeted advertisements that are based on students' video-watching behavior, education records and other [personally identifiable information]; and (b) improved course offerings."), ¶ 121 (Defendant did not obtain consent), ¶ 123 (no consent). Viewed in the proper light, Plaintiff's allegations and the reasonable inferences therefrom show Defendant: (a) knew or had reason to know the communications at issue were obtained in violation of the ECPA (*i.e.*, for Defendant to obtain the information it needed to more effectively advertise, Defendant had to violate the ECPA); and (b) used and endeavored to use the contents of the intercepted communications.

Again, because Defendant does not contest that it violated the ECPA by unlawfully using the contents of Plaintiff's and Class members' communications, it has waived and/or forfeited the argument. *See Admin. Committee*, 2001 WL 32874, at *5; *Walker*, 155 F.3d at 930 n.4; *Great Northern Ins. Co.*, 2019 WL 3935038, at *4; *Narducci,* 572 F.3d at 324. And, as discussed above, the party exception to liability does not apply to a party's use of intercepted communications.

### C. Plaintiff Sufficiently Alleges that Plaintiff's and Class Members' Communications Were Intercepted "In Transit."

Ignoring Plaintiff's allegations and the reasonable inferences therefrom, Defendant contends Plaintiff's ECPA claim fails because "Plaintiff fails to allege that any information was intercepted 'in transit' as opposed to merely acquired at some point by a third party." Dkt. 20 at 27. When Plaintiff's allegations are properly considered, Plaintiff has sufficiently alleged that Plaintiff's and Class members' communications were intercepted in transit.

Specifically, Plaintiff alleges the interception of Plaintiff's and Class members' communications by third parties concurrently with their transmission to Defendant. For instance, when describing the functionality of the Facebook Tracking Pixel, Plaintiff alleges that the transmission of intercepted communications to Facebook "is initiated by Facebook code *and concurrent with the communications with the host website*." Dkt. 1 ¶ 30 (emphasis added); *see also id.* ¶ 31 ("Facebook causes the browser to secretly and concurrently duplicate the communication with the Website, transmitting it to Facebook's servers . . . ."). Plaintiff makes similar allegations regarding the tracking code of the other Third-Party Tracking Companies. *See, e.g., id.* ¶ 38 (Google's tracking code can monitor activity "'*as it happens*'"),[4] ¶ 40 ("Google *directly receives the electronic communications of website visitors* entered into websites via website and app features like search bars"), ¶ 58 ("through websites that employ LinkedIn's services, LinkedIn *directly receives the electronic communications of website visitors*"), ¶ 66 ("through websites that employ TikTok's services, TikTok *directly receives the electronic communications of website visitors in real time*").

The above allegations and the reasonable inferences therefrom make clear that the third parties at issue intercept the communications "in real time" "directly" from the website visitors – *i.e.*, in transit. The allegations are sufficient. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1027 (N.D. Cal. 2014) (allegations that communications were intercepted in transit and before being placed into storage are sufficient); *see also Aspen*¸ 2024 WL 4119153, at *7 (under California's wiretapping statute, allegations that the tracking code caused a user's device to contemporaneously redirect the user's communications sufficiently alleged "in-transit" transmission); *Doe v. Eating*

[4] All emphases in this string citation are added.

*Recovery Ctr. LLC*, 2025 WL 2852210, at *1 (N.D. Cal. June 4, 2024) (same).[5]

Defendant reaches a different conclusion by ignoring and rewriting Plaintiff's allegations and the law. According to Defendant, Plaintiff's "allegations show that third parties are not actively intercepting or viewing the communication as they are in transit . . . but rather, they are being stored by the tracking technologies to access at their leisure to use in marketing efforts." Dkt. 20 at 28. As discussed above, that is not what Plaintiff alleges. Moreover, whether the third parties instantaneously view the intercepted communications has no bearing on whether the communications are intercepted in transit in the first instance.

*Rodriguez v. Google LLC*, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022), relied on by Defendant (Dkt. 20 at 28), is distinguishable. Unlike here, in that case, the plaintiffs failed to allege how the defendant intercepted communications in transit and, instead, alleged that the defendant logged the data before transmitting it at a later time. *Rodriguez*, 2022 WL 214552, at *1.

## IV. Plaintiff Sufficiently Alleges a Violation of the IEA.

### A. Plaintiff Sufficiently Alleges Defendant's Liability as a Principal.

Defendant contends Plaintiff may not assert an IEA claim under § 14-2(a)(3) of the IEA because Defendant was a party to the communications at issue. Dkt. 20 at 29-30. Not so.

IEA § 14-6 provides that a party to an "electronic communication upon which eavesdropping is practiced" contrary to the IEA is entitled to the following remedies, among others:

> (a) To an injunction . . . prohibiting further eavesdropping by the eavesdropper and *by or on behalf of his principal*, or either;

[5] Courts have also specifically found that allegations regarding data sharing through the Facebook Tracking Pixel in particular address interceptions made "in transit." *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1131 (S.D. Cal. 2023) (holding, in the context of a claim under the California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq.*, that plaintiffs adequately pled that the Meta Pixel intercepted communications "in transit"); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) (same); *Doe v. Tenet Healthcare Corp.*, 2025 WL 1635956, at *14 (E.D. Cal. June 9, 2025) (same).

(b) To all actual damages against the eavesdropper or *his principal*, or both;

(c) To any punitive damages which may be awarded . . . .

720 Ill. Comp. Stat. 5/14-6 (emphasis added). Thus, a victim of eavesdropping may bring an action against both an eavesdropper and the eavesdropper's principal. *See id.* Under the IEA, a "principal" is any person who: "(1) [k]nowingly employs another who illegally uses an eavesdropping device in the course of such employment; or (2) [k]nowingly derives any benefit or information from the illegal use of an eavesdropping device by another; or (3) [d]irects another to use an eavesdropping device illegally on his or her behalf." 720 Ill. Comp. Stat. 5/14-1(c).

Plaintiff alleges Defendant violated § 14-2(a)(3) of the IEA, which makes it unlawful for a person to knowingly and intentionally "intercept[], record[], or transcribe[], in a surreptitious manner, any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication." 720 Ill. Comp. Stat. 5/14-2(a)(3); *see also* Dkt. 1 ¶¶ 128-41. Plaintiff alleges liability against Defendant as the principal of various third parties, including the Third-Party Tracking Companies, who used eavesdropping devices to intercept Plaintiff's and Class members' electronic communications. Dkt. 1 ¶ 139. Specifically, Plaintiff alleges Defendant was a principal because it:

> (a) knowingly derives and derived a benefit and information from the illegal use of the eavesdropping devices of third parties, including the Third-Party Tracking Companies, whose tracking technologies Defendant integrated, installed and embedded into the Website – including detailed information about students who use and used the Website, including Plaintiff and Illinois Subclass members; and (b) directed third parties, including the Third-Party Tracking Companies, to illegally use an eavesdropping device on Defendant's behalf.

*Id.* As a principal of the third-party eavesdroppers, Defendant is subject to liability under § 14-6

of the IEA. *See* 720 Ill. Comp. Stat. 5/14-6.[6]

Notwithstanding Plaintiff's allegations and the plain language of the IEA, Defendant contends Plaintiff may not bring a claim against Defendant because § 14-2(a)(3) "only applies where the defendant 'is not a party' to the communication." Dkt. 20 at 29 (quoting 720 Ill. Comp. Stat. 5/14-2(a)(3)). The contention lacks merit.

Defendant makes no claim that the third-party eavesdroppers were parties to Plaintiff's and Class members' communications at issue – they were not. As such, Defendant and Plaintiff agree that § 14-2(a)(3) encompasses the conduct of the non-party, third-party eavesdroppers. Because the IEA allows a victim to bring a civil action against both the eavesdropper and the eavesdropper's principal, *see* 720 Ill. Comp. Stat. 5/14-6, Plaintiff has properly brought suit against Defendant.

Defendant tries to confuse the issue, claiming that Plaintiff "skirts around identifying the other party to her communications" in an effort to allege principal liability. *See* Dkt. 20 at 30. According to Defendant, Plaintiff's "theory of liability fails if the University is a party to her communications." *Id.* But that is not the case. As discussed above, Plaintiff's theory of liability rests on the third-party eavesdroppers being non-parties (an undisputed fact), and Defendant being their principal. *See Vasil v. Kiip*, 2018 WL 1156328, at *6 (N.D. Ill. Mar. 5, 2018) (under Illinois law an unintended recipient of a communication is not a party). Based on Plaintiff's actual allegations and the express language of the IEA, Defendant is subject to liability as a principal.

*Zak v. Bose*, 2019 WL 1437099 (N.D. Ill. Mar. 31, 2019) (Dkt. 20 at 29), is distinguishable. Unlike here, the plaintiff in that case did not bring suit against the defendant in its capacity as a principal. *See Zak*, 2019 WL 1437099, at *5. Rather, the plaintiff asserted that the defendant was

[6] Should the Court find that Plaintiff cannot state a claim under 720 Ill. Comp. Stat. 5/14-2(a)(3), Plaintiff seeks leave to amend in order to allege a violation of 720 Ill. Comp. Stat. 5/14-2(a)(2). *See Aspen*, 2024 WL 4119153, at *4.

a non-party to the communications, an assertion with which the court disagreed. *Id.*

In a footnote, Defendant further contends that: (a) § 14-2(a)(3) does not mention the word "eavesdropper"; and (b) Defendant cannot be an eavesdropper because Plaintiff does not allege the interception of oral communications. Dkt. 20 at 29, n.5. Defendant is correct that § 14-2(a)(3) describes when a "person commits eavesdropping." *See* 720 Ill. Comp. Stat. 5/14-2(a)(3). Defendant omits that § 14-6 then provides for liability against the "eavesdropper" and its principal. *See* 720 Ill. Comp. Stat. 5/14-6.

Defendant's contention that it cannot be an eavesdropper because Plaintiff does not allege the interception of oral communications is baseless. The IEA clearly defines an "eavesdropper" as "*any person*, including . . . any party to a private conversation, who operates or participates in the operation of any eavesdropping device . . . ." 720 Ill. Comp. Stat. 5/14-1(b) (emphasis added). While the definition includes a party to a "private conversation" (which is defined as an oral communication), it is not limited to such a party.

**B. Plaintiff Seeks Proper Relief Under the IEA.**

Defendant contends Plaintiff's IEA claim "fails for the independent reason that the IEA only applies if Plaintiff alleges 'actual damages.'" Dkt. 20 at 30. However, as quoted above, the IEA expressly allows a victim to seek injunctive relief and punitive damages, in addition to actual damages. 720 Ill. Comp. Stat. 5/14-6(a)-(c). In her Complaint, Plaintiff seeks injunctive relief and punitive damages, in addition to actual damages, for Defendant's IEA violations. Dkt. 1 ¶¶ 140-41, Prayer for Relief. Thus, notwithstanding Defendant's contention regarding actual damages, Plaintiff's IEA claim is proper because it seeks injunctive relief and punitive damages.

With respect to "actual damages," Defendant points to no authority requiring a plaintiff to plead her actual damages in connection with an IEA claim. *See* Dkt. 20 at 30-31. Under Illinois

law, it is presumed "that damages exist for every infringement of every right." *Ainsworth v. Century Supply Co.*, 295 Ill.App.3d 644, 649 (Ill. Ct. App. 1998). Further, a plaintiff may recover nominal damages where he fails to provide a basis for computing his damages. *Giammanco v. Giammanco*, 253 Ill.App.3d 750, 758 (Ill. Ct. App. 1993).

Here, Plaintiff pleads that Defendant's unlawful conduct injured Plaintiff and relevant class members and "entitles them to . . . actual damages." *Id.* ¶ 140. Those allegations are sufficient.

Defendant's reliance on *McDonald's v. Levine*, 439 N.E.2d 475 (Ill. Ct. App. 1982) (Dkt. 20 at 30), is misplaced. The issue in *McDonald's* was whether the lower court properly determined the applicable statute of limitations. 439 N.E.2d at 479-80. The determination rested on whether the IEA provided for a statutory penalty. *See id.* The appellate court held it did not. *Id.* at 480. The court also noted that a victim of eavesdropping "must prove he is entitled to damages in the same manner as he would in any common law tort action." *Id.* Here, Plaintiff has not alleged entitlement to a statutory penalty under the IEA. Plaintiff alleges an injury and entitlement to actual damages. Dkt. 1 ¶ 140. Plaintiff will prove up those damages at the appropriate time.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion to dismiss in its entirety. However, should the Court grant any part of Defendant's motion, Plaintiff respectfully requests leave to file an amended complaint.

Dated: July 14, 2025

Respectfully submitted,

Janielle Dawson, individually and on behalf all
others similarly situated

By: /s/ Scott R. Drury
SCOTT R. DRURY
One of Plaintiff's attorneys

Scott R. Drury
**DRURY LEGAL, LLC**
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-Mail: scott@drurylegal.com

Joshua D. Arisohn (to be admitted *pro hac vice*)
**ARISOHN LLC**
513 Eighth Avenue, #2
Brooklyn, NY 11215
Telephone: (646) 837-7150
Email: josh@arisohnllc.com

*Attorneys for Plaintiff and putative class members*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all Counsel of Record.

*/s/ Scott R. Drury*
SCOTT R. DRURY