**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JANIELLE DAWSON, individually and on behalf of all others similarly situated, | ) | |
| Plaintiff, | ) | No.: 1:25-cv-03497 |
| v. | ) | |
| THE UNIVERSITY OF PHOENIX, INC., | ) | Hon. Mary M. Rowland |
| Defendant. | ) | |

**<u>REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT</u>**

Joel Griswold (6277574)
Bonnie Keane DelGobbo (6309394)
Katharine H. Walton (6339805)
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 3700
Chicago, Illinois 60606
(312) 416-6200 (phone)
(312) 416-6201 (fax)
jcgriswold@bakerlaw.com
bdelgobbo@bakerlaw.com
kwalton@bakerlaw.com

*Attorneys for Defendant*
*The University of Phoenix, Inc.*

# TABLE OF CONTENTS

**Page**


I. ARGUMENT ..... 1

A. Plaintiff Fails to State a Claim Under the VPPA ..... 1

1. The University Is Not a Video Tape Service Provider ..... 1

2. Plaintiff Is Not a Consumer ..... 2

3. Plaintiff Does Not Allege The University Knowingly Disclosed PII ..... 3

4. Plaintiff Fails to Allege Actual Damages ..... 5

5. The VPPA Violates The First Amendment ..... 6

B. Plaintiff Fails to State A Federal Wiretap Act Claim ..... 9

1. The University Was A Party To The Communications ..... 9

2. The Information Was Not Intercepted "In Transit" ..... 13

C. Plaintiff Fails to Plead a Violation of the Illinois Eavesdropping Act ..... 13

II. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Cahill*,
598 F.3d 79 (2d Cir. 2010)....7

*Alioto v. Town of Lisbon*,
651 F.3d 715 (7th Cir. 2011) ....12

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
591 U.S. 610 (2020)....6, 7

*Brown v. Entm't Merchants Ass'n*,
564 U.S. 786 (2011)....9

*Buckingham v. Gailor*,
No. 00-CV-1568, 2001 WL 34036325 (D. Md. Mar. 27, 2001), *aff'd sub nom. Buckingham ex rel. Buckingham v. Gailor*, 20 F. App'x 243 (4th Cir. 2001) ....10

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010)....6

*Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*,
891 F. Supp. 2d 13 (D.D.C. 2012)....10

*Dahlstrom v. Sun-Times Media, LLC*,
777 F.3d 937 (7th Cir. 2015) ....7

*Doe 1 v. Chestnut Health Sys., Inc.*,
No. 1:24-CV-01475-JEH-RLH, 2025 WL 1616635 (C.D. Ill. June 6, 2025) ....11

*Doe v. Chao*,
540 U.S. 614 (2004)....5

*Doe v. Genesis Health Sys.*,
2025 WL 1000192 (C.D. Ill. Mar. 18, 2025)....11

*Edenfield v. Fane*,
507 U.S. 761 (1993)....7

*Fanin v. U.S. Dep't of Veterans Affairs*,
572 F.3d 868 (11th Cir. 2009) ....5

*Florida Bar v. Went For It, Inc.*,
515 U.S. 618 (1995)....7

*Goulart v. Cape Cod Healthcare, Inc.*,
No. CV 25-10445-RGS, 2025 WL 1745732 (D. Mass. June 24, 2025) ....................................12

*Hughes v. Nat'l Football League*,
2025 WL 1720295 (2d Cir. June 20, 2025) ....................................................................3

*Jurgens v. Build.com*,
2017 WL 5277679 (E.D. Mo. Nov. 13, 2017).................................................................11

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2012) .......................................................................................10

*Lonegan v. Hasty*,
436 F. Supp. 2d 419 (E.D.N.Y. 2006) ..............................................................................10

*Manza v. Pesi, Inc.*,
2025 WL 1445762 (W.D. Wis. May 20, 2025) .................................................................1, 2

*Nguyen v. Elsevier Inc.*,
2025 WL 1635679 (N.D. Cal. June 9, 2025)......................................................................1, 2

*Pac. Frontier v. Pleasant Grove City*,
414 F.3d 1221 (10th Cir. 2005) .........................................................................................7

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985).......................................................9

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000) ..........................................................................................9, 10

*Peters v. Mundelein Consol. High Sch. Dist. No. 120*,
No. 21 C 0336, 2022 WL 393572 (N.D. Ill. Feb. 9, 2022).................................................15

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015)........................................................................................................6, 7

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024)..............................................................................................1

*Shefts v. Petrakis*,
954 F. Supp. 2d 769 (C.D. Ill. 2013) ...............................................................................10

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) .............................................................................................6

*Solomon v. Flipps Media, Inc.*,
No. 23-7597 (2d Cir. July 24, 2025).................................................................................3, 4

*Stark v. Patreon, Inc.*,
656 F. Supp. 3d 1018 (N.D.Cal. 2023) ....................................................................6

*U.S. W., Inc. v. F.C.C.*,
182 F.3d 1224 (10th Cir. 1999) ....................................................................7

*United States v. Fredrickson*,
996 F.3d 821 (7th Cir. 2021) ....................................................................6

*USA Gymnastics v. Liberty Ins. Underwriters, Inc.*,
27 F.4th 499 (7th Cir. 2022) ....................................................................11

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) ....................................................................4

*Zak v. Bose*,
No. 17-xv-02928, 2019 WL 1437909 (N.D. Ill. Mar. 31, 2019) ..........................14

**Statutes**

65 ILCS 5/10-2.1-6 ....................................................................2

225 ILCS 450/3 ....................................................................2

720 ILCS 5/14-1(c) ....................................................................14

720 ILCS 5/14-1(d) ....................................................................14

720 ILCS 5/14-1(e) ....................................................................15

720 ILCS 5/14-2(a)(1) ....................................................................14

720 ILCS 5/14-2(a)(3) ....................................................................13, 14

720 ILCS 5/142(a)(2) ....................................................................14

18 U.S.C. § 2511(1)(a) ....................................................................11

18 U.S.C. § 2511(1)(c) ....................................................................11

18 U.S.C. § 2511(1)(d) ....................................................................11

18 U.S.C. § 2511(2)(d) ....................................................................10, 11

18 U.S.C. § 2520(a) ....................................................................9, 10

18 U.S.C. § 2710(a)(3) ....................................................................3

18 U.S.C. § 2710(a)(4) ....................................................................2

18 U.S.C. § 2710(c)(2)(A) ....................................................................................................5

**Other Authorities**

34 CFR § 99.3 ..............................................................................................................8, 15

34 CFR § 99.37(a)..........................................................................................................8, 15

https://www.phoenix.edu/copyright-legal/terms-conditions.html ..................................................3

Ill. Admin. Code tit. 23, § 25.90 .........................................................................................2

Ill. Admin. Code tit. 89, § 407.140 .......................................................................................2

# I. ARGUMENT

## A. Plaintiff Fails to State a Claim Under the VPPA.

### 1. The University Is Not a Video Tape Service Provider.

Plaintiff conspicuously does not address the University's statutory language argument that it is not a "video tape service provider" because the focus of the University's business is post-secondary education, not renting, selling, or delivering *videos*. While Plaintiff repeatedly admits that the University is "an online university" that offers "degree programs and single courses," she argues it is a "video tape service provider" simply because she alleges "many of those programs and courses [are] in the form of prerecorded video lectures."[1] (ECF No. 23 at 3-4.) But Plaintiff's specific allegations demonstrate the University is a federally-regulated post-secondary institution (e.g., ECF 1 ¶ 12) where she enrolled in a *degree program*, and any videos are secondary to the University's business of providing education courses—*not renting, selling, or delivering video content* in and of itself. (ECF No. 1 ¶ 73 ("***[The University] sells degree programs and single courses***, both of which are taught using prerecorded videos.") (emphasis added).)

Plaintiff does not cite a single case holding that a *university* is a video tape service provider. Plaintiff cites *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024), but that case addressed the "consumer" element of the VPPA, not whether the defendant (a sports franchise) was a video tape service provider. Plaintiff's reliance on *Manza v. Pesi, Inc.*, 2025 WL 1445762 (W.D. Wis. May 20, 2025) and *Nguyen v. Elsevier Inc.*, 2025 WL 1635679 (N.D. Cal. June 9, 2025) is misplaced. The defendants in those cases were not universities, and the plaintiffs did not allege they enrolled in a university course or degree program. Rather, those cases involved

---

[1] Although Plaintiff's allegations must be accepted as true on a motion to dismiss, the reality is that the University's typical online course format involves reading course material and then participating in discussion posts with one's classmates—not watching prerecorded videos.

websites that *admittedly sold videos* and focused on arguments not raised in the University's motion. *See Manza*, 2025 WL 1445762, at *1-3 (addressing whether not-for-profit organization could be a "business" under the VPPA); *Nguyen*, 2025 WL 1635679 (addressing whether an entity is covered by the VPPA where it sells both videos and other products). A person who enrolls in and completes university courses earns college credits or a college degree, which are often required for certain jobs, further education, or professional licensure.[2] This is materially different than a person who simply watches online videos about a topic and then holds themselves out as knowledgeable about that topic. The focus of the University's business is providing *courses* and *degree programs*—not selling, renting, or delivering videocassette tapes.

Moreover, it would be inconsistent with the statutory language limiting video tape service providers if a court were to hold that a university is covered by the VPPA if it uses prerecorded videos in conveying course content but is not covered if it conveys the same course content only through live-streaming video or in person.[3] *See* 18 U.S.C. § 2710(a)(4). Regardless of how it provides course content to its students, the University is not a video tape service provider.

**2. <u>Plaintiff Is Not a Consumer.</u>**

Plaintiff contends she is a "consumer" because she "purchased" *degree programs* and *courses*. (ECF No. 23 at 5). But Plaintiff doesn't respond to the University's argument that it is entirely unnatural to say that a university student "purchases" a college course or college degree because a student "attends" or "enrolls" in the course or degree program—terms not found in the

---

[2] *See, e.g.*, Ill. Admin. Code tit. 89, § 407.140 (early childhood teachers must complete 60 semester hours of credits "from an accredited college or university"); 225 ILCS 450/3 (CPA applicant must "present proof of 120 college or university semester hours of study"); 65 ILCS 5/10-2.1-6 (active duty police officers must have "2 years of law enforcement studies at an accredited college or university"); Ill. Admin. Code tit. 23, § 25.90 (transitional bilingual educators must "hold a bachelor's degree or higher from a regionally accredited institution of higher education").

[3] The University itself also offers in-person instruction. Under Plaintiff's nonsensical theory, the University would be a video tape service provider and violate the VPPA if it disclosed that she enrolled in a degree program with prerecorded video-based courses, but would not be a video tape service provider and would not violate the VPPA if it disclosed that she enrolled in a degree program and attended the University's in-person courses.

VPPA's definition of "consumer." (ECF 20 at 4.) Plaintiff's allegations that she enrolled in courses and a degree program do not make her a "renter, purchaser, or subscriber" of anything.[4]

### 3. Plaintiff Does Not Allege The University Knowingly Disclosed PII.

A VPPA claim requires that the defendant disclosed "information which identifies a person as having requested or obtained specific video materials or services." 18 U.S.C. § 2710(a)(3). Plaintiff does not specify what information the University allegedly disclosed about her or her video watching history. She offers only conclusory allegations of disclosure of unspecified information that are insufficient to state a claim. (ECF No. 20 at 6.)

The University cited *Solomon*, *In re Nickelodeon Consumer Priv. Litig*., and *Ellis* to argue that the FID and other static digital identifiers are not PII because they do not identify a specific person. (ECF No. 20 at 5-7.) After the University filed its opening brief, the Second Circuit reaffirmed that "*Solomon* effectively shut the door for Pixel-based VPPA claims." *Hughes v. Nat'l Football League*, 2025 WL 1720295, at *2 (2d Cir. June 20, 2025). The Second Circuit has now denied *en banc* review in *Solomon*, implicitly rejecting Plaintiff's arguments for disregarding the reasoning in *Solomon*. *Solomon v. Flipps Media, Inc.*, No. 23-7597 (2d Cir. July 24, 2025). Consequently, it remains that the only federal appellate court to address the issue has held that the FID is not PII under the VPPA.

Plaintiff asks this Court to reject not only *Solomon* but also the ordinary person standard, which has been expressly adopted by three out of four federal Circuits to address the issue plus the overwhelming majority of district courts outside the First Circuit. (ECF No. 23 at 6.) In support of her extraordinary request, she cites only a single district court case in Wisconsin. (*Id.* at 7.) But as

[4] The Court should disregard Plaintiff's citation to the March 2024 version of the University's Terms and Conditions. (ECF No. 23 at 6 (citing (https://www.phoenix.edu/copyright-legal/terms-conditions.html).) Plaintiff does not incorporate this document into her Complaint, nor does her Complaint contain any allegations that these Terms & Conditions were in effect when she was a student at the University.

*Solomon* observed, the reasonable foreseeability standard employed in the First Circuit sweeps far too broadly, unmoors the VPPA from its historical context, and produces the nonsensical result that the *exact same information* is PII when disclosed to one person but is not PII when disclosed to another. *Solomon*, 136 F.4th at 50-51. In contrast, the ordinary person standard aligns with "'the disclosing-party focus of the [VPPA]'" which "'looks to what information a video services provider discloses, not to what the recipient of that information decides to do with it.'" *Id.* at 51.

Plaintiff argues an FID and other identifiers are PII under the ordinary person standard simply because some district courts in California have found it to be so. (ECF No. 23 at 7-9.) However, even Plaintiff admits that information such as the FID does not *alone* identify anyone to a reasonable person, but rather must be combined with other data such as whatever information may be available on a public Facebook profile. (*E.g.*, ECF No. 1 ¶ 79.) There is no basis in the statutory text to hold information which does not itself identify a person can somehow constitute "information which identifies a person" merely because it might theoretically be possible to use that information to launch an investigation attempting to identify a person.

Even if this Court were to reject the great weight of authority and adopt the reasonable foreseeability standard articulated in *Yershov*, the information at issue there included video titles, GPS coordinates, and unique device identifiers, and the court's analysis seemed to turn heavily on the GPS coordinates. *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 484 & 486 (1st Cir. 2016). Here, Plaintiff does not allege transmission of any GPS coordinates, and the computer code transmissions described in the Complaint should not be deemed to satisfy the reasonable foreseeability standard either.

Finally, Plaintiff argues she has adequately pled the University *knowingly* disclosed PII because the University "knowingly installed the Facebook Tracking Pixel on the Website, and

configured the Facebook Tracking Pixel to integrate with the Adobe Analytics platform." (ECF No. 23 at 9.) But this quote appears nowhere in Plaintiff's Complaint, nor does her Complaint contain any references to Adobe Analytics. Further, Plaintiff does not contest (and thereby concedes) the University's argument that the University has no way to *know* whether Plaintiff—or any users—had an identifier, much less what those identifiers were, or whether Plaintiff set her browser to allow cookies. (ECF No. 20 at 7.) Her claim must be dismissed.

**4. <u>Plaintiff Fails to Allege Actual Damages.</u>**

The VPPA makes clear a plaintiff must establish "actual damages" to recover under the statute: "[t]he court may award actual damages but not less than liquidated damages in an amount of $2,500." 18 U.S.C. § 2710(c)(2)(A). This does not create two separate and independent avenues for recovery; it establishes that actual damages must be alleged and proven. The Supreme Court squarely addressed this issue in construing a federal statute with similar language in *Doe v. Chao*, 540 U.S. 614 (2004), where it held that actual damages are a prerequisite to recovering the statutory amount. *Id.* at 627; (*see also* ECF No. 20 at 7-9). Courts applying *Doe* have held a plaintiff must establish actual damages in order to be entitled to relief under the statute. *See, e.g.*, *Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 872 (11th Cir. 2009) (pecuniary harm required to recover for Privacy Act violation). The non-binding *Saunders* decision that Plaintiffs cites misapplies *Doe* and *Fanin* and does not address the Supreme Court's emphasis that its interpretation of the damages language in *Doe* turned on the presence of the phrase "actual damages" in the statute, *see Doe*, 540 U.S. at 623 n.8—the phrase that is also present in the VPPA's damages provision.

Plaintiff alternatively argues that she can amend to allege actual damages because "the privacy violation can be assigned some pecuniary value," "the data at issue has value, and its improper disclosure thus deprived Plaintiff of a potential revenue stream." (ECF No. 23 at 10.)

However, this injury theory has been regularly rejected by courts where a plaintiff does not allege any facts regarding how the value of her PII was diminished or that she intended to sell her own PII. *See, e.g., Silha v. ACT, Inc*., 807 F.3d 169, 172 (7th Cir. 2015) ("reject[ing] the claimed injury of diminished value of PII because Plaintiff failed to 'allege that they have the ability to sell their personal information or that Defendant's conduct foreclosed them from entering into a 'value for value transaction' relating to their PII."). Plaintiff's proposed amendment would be futile.

**5. <u>The VPPA Violates The First Amendment.</u>**

The University's opening brief (at 9-14) demonstrated the VPPA imposes severe speech restrictions not justified under either strict or intermediate scrutiny. Plaintiff's perfunctory efforts to satisfy her burden to justify the VPPA fall short because she does not adequately support her invocation of intermediate scrutiny over strict scrutiny. Although Plaintiff attempts to argue the VPPA is content-neutral, the VPPA is plainly "targeted at specific subject matter," *Reed v. Town of Gilbert,* 576 U.S. 155, 169 (2015), because it restricts "only the disclosure of 'personally identifiable information concerning any consumer'… it does not govern any other content the provider might wish to communicate." *Stark v. Patreon, Inc.,* 656 F. Supp. 3d 1018, 1034 (N.D.Cal. 2023).[5] Additionally, Plaintiff does not dispute that the VPPA imposes speaker-based restrictions (ECF 20 at 10) that impermissibly "distinguish[] among different speakers." *Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 340 (2010).

Plaintiff asserts commercial-speech restrictions are subject to intermediate scrutiny, but she does not even cite recent Supreme Court cases applying strict scrutiny to content-based speech regulations. *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 618–19 (2020); *Reed v.*

[5] *Stark* punted the question of whether the VPPA violates the First Amendment until after "a factual record" was developed. 656 F. Supp. at 1038. But the University's challenge presents a pure matter of law. *United States v. Fredrickson*, 996 F.3d 821, 823 (7th Cir. 2021).

*Town of Gilbert, Ariz.*, 576 U.S. 155, 172 (2015). Both decisions involved commercial speech: *American Association of Political Consultants* involved a ban on robocalls to cell phones, 591 U.S. at 816, and *Reed* involved sign advertising, 576 U.S. at 165–71. These decisions make clear "*content-based*" distinctions "are subject to strict scrutiny" and governments have "ample content-neutral options available to resolve problems" they attempt to resolve with content-based restrictions. *Reed*, 576 U.S. 172–73. As the Seventh Circuit has explained, "[t]he appropriate standard of review for such a regulation hinges on whether the regulation is content based, which requires us to apply strict scrutiny, or content neutral, which demands only an intermediate level of scrutiny." *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 949 (7th Cir. 2015). Because the VPPA is content-based and speaker-based, strict scrutiny applies.[6] Plaintiff makes no argument that the VPPA can survive strict scrutiny.

Plaintiff's arguments under intermediate scrutiny are also unconvincing. Her sweeping assertion that "privacy interests" justify the VPPA are precisely the type of "broad" assertion that does not work. *U.S. W., Inc. v. F.C.C.*, 182 F.3d 1224, 1235 (10th Cir. 1999). While Plaintiff contends the VPPA *protects* First Amendment interests, she has no response to the University's point (at 12) that the First Amendment constrains state action whereas the VPPA constrains private speech—and thus *invades* rather than *protects* First Amendment interests. Plaintiff also fails to respond to the University's observation that no meaningful evidence before Congress justified the VPPA's speech restrictions: the First Amendment cannot be satisfied with only two referenced incidents resulting in no cognizable harm. *See, e.g.*, *Edenfield v. Fane*, 507 U.S. 761, 771 (1993); *Alexander v. Cahill*, 598 F.3d 79, 92 (2d Cir. 2010); *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235 n.12 (10th Cir. 2005).

[6] *Florida Bar v. Went For It, Inc.*, 515 U.S. 618 (1995), the authority Plaintiffs cite (at 13), did not address whether the restriction at issue was content-based and thus is uninformative.

In addition, Plaintiff cannot explain how the VPPA is properly tailored when it protects only purported privacy interests in courses containing recorded videos but not the University's course catalog identifying those same courses or Plaintiff's directory information. Under FERPA, directory information is information contained in the education records of a student that would not generally be considered harmful or an invasion of privacy if disclosed, including, but not limited to, "the student's name; address; telephone listing; electronic mail address; photograph; date and place of birth; major field of study; grade level; enrollment status (*e.g.,* undergraduate or graduate, full-time or part-time); dates of attendance; participation in officially recognized activities and sports; weight and height of members of athletic teams; degrees, honors, and awards received; and the most recent educational agency or institution attended." 34 CFR § 99.3; 34 CFR § 99.37(a). So, if a student enrolled at the University to earn a Bachelor of Science Degree in Business, the University could disclose that fact and the student's name, address, and birthday (directory information). Yet, Plaintiff nonsensically contends there is a protectable privacy interest if the University discloses that same student watched videos as part of their Finance for Business or Principles of Microeconomics courses as part of their degree program. Videos related to widely publicized college course subject matter are not subject to a legitimate claim of privacy. Not only is the VPPA improperly tailored, in this matter, it does not protect a privacy interest at all.

Plaintiff likewise fails to explain how the VPPA is properly tailored when it protects only purported privacy interests in recorded videos but not live videos, books, magazines, music, and pictures. (ECF 20 at 13-14.) Plaintiff references the VPPA's "exceptions" (ECF 23 at 14), but the VPPA is not principally underinclusive because of the exceptions it creates from its speech ban but rather because the ban accomplishes so little. The VPPA does next to nothing to protect Americans from disclosures about activities that may expose them to ridicule because most of that

activity occurs through engagement with pictures, books, magazines, newspapers, online subscriptions, texts, blogs, letters, and other materials beyond the VPPA's ambit. A consumer who watches a video version of a book receives full protection under the VPPA, but one who reads the book itself receives nothing. The statute singles out some content providers for disfavored treatment and relieves similarly situated content providers from the same burdens. *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 802 (2011). Plaintiff simply does not address this point.

### B. Plaintiff Fails to State A Federal Wiretap Act Claim.

#### 1. <u>The University Was A Party To The Communications.</u>

Plaintiff expressly admits that "Defendant was a party to the communications at issue" and that the Wiretap Act "exempts from liability an entity that is a party to the communications at issue." (ECF 23 at 18 n. 3.) However, Plaintiff then makes a convoluted argument that the University should nonetheless be liable under the Wiretap Act for "procuring others to intercept and/or endeavor to intercept Plaintiff and Class member's electronic communications" (ECF 23 at 15) and for "using and endeavoring to use the contents of Plaintiff's and Class members' electronic communications" (ECF 23 at 18.). Plaintiff's argument fails for numerous reasons.

First, as Plaintiff admits, federal appellate authority holds that there is no civil private right of action against a company that allegedly "procures" a third party to intercept a communication. *See Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000). As *Peavy* explained:

> Section 2520(a)'s plain, unambiguous language authorizes a civil action by one whose covered "communication is *intercepted, disclosed, or intentionally used in violation of this chapter*", from "the person or entity *which engaged in that violation*". 18 U.S.C. § 2520(a) (Supp.2000) (emphasis added). "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). Restated, we must assume Congress meant what it said in the amendment. Accordingly, "that violation" refers only to illegal interception, disclosure, or use, and *not* to procuring interception by another.

*Peavy*, 221 F.3d at 169. Indeed, Congress deleted reference to "procures" when it amended the civil liability provision of the Wiretap Act in 1986. *Id.* at 168-69. *Accord Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1247 (10th Cir. 2012) (Congress deleted the "procures" clause from the civil remedies provision and "[w]e presume that this deletion was intended to change the statute's meaning"). District courts within the Seventh Circuit and elsewhere have adopted *Peavy*'s construction.[7]

Second, even if the statute permitted a private right of action against a company that "procures" third parties to intercept a communication to which the company is *not* a party, the statute cannot be interpreted to permit a private right of action against a company that "procures" third parties to intercept a communication or "uses" a communication *to which it is a party*. The Wiretap Act states that "*It shall not be unlawful* under this chapter for a person … to intercept a wire, oral, or electronic communication where such person is a party to the communication *or* where one of the parties to the communication has given prior consent to such interception…" 18 U.S.C. § 2511(2)(d) (emphasis added). The statute's use of the disjunctive word "or" makes clear that an interception is "not…unlawful" if *either* of the two criteria are met: (1) "such person is a party to the communication" *or* (2) "one of the parties to the communication has given prior consent to such interception…" *Id.* The civil remedies provision provides a cause of action only where the "communication is intercepted, disclosed, or intentionally used *in violation of this chapter*…" 18 U.S.C. § 2520(a). Thus, where the original interception was not "not…unlawful"

---

[7] *See Shefts v. Petrakis*, 954 F. Supp. 2d 769, 774-77 (C.D. Ill. 2013); *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13 (D.D.C. 2012); *Buckingham v. Gailor*, No. 00-CV-1568, 2001 WL 34036325 (D. Md. Mar. 27, 2001), *aff'd sub nom. Buckingham ex rel. Buckingham v. Gailor*, 20 F. App'x 243 (4th Cir. 2001). Although Plaintiff cites a few decisions to suggest that should not be the outcome here, *Shefts* recognized that *Lonegan v. Hasty*, 436 F. Supp. 2d 419 (E.D.N.Y. 2006), one of the cases cited by Plaintiff is an "outlier." *Shefts*, 945 F. Supp. 2d at 775.

under Section 2511(2)(d) because the person was a party to the communication or a party to the communication consented to the interception, there is no "violation" under Section 2520(a).

Having expressly admitted that "Defendant was a party to the communications at issue" and that the Wiretap Act "exempts from liability an entity that is a party to the communications at issue" (ECF 23 at 18 n. 3), Plaintiff cannot state a claim under the Wiretap Act. This is true regardless of whether Plaintiff's theory is that the University itself "intercepted" the communications, that the University "procured" third parties to intercept the communication, or that the University "used" those communications. (ECF 23 at 15-19.[8]) In each instance, the statute makes clear that such interception is "not…unlawful under this chapter…" 18 U.S.C. § 2511(2)(d). *See Doe v. Genesis Health Sys.*, 2025 WL 1000192, at *8-9 (C.D. Ill. Mar. 18, 2025) (applying party exception to plaintiff's theory that defendant "intentionally intercepted, endeavored to intercept and procured another person to intercept" plaintiff's communications through use of "tracking technology on its Website"); *Doe 1 v. Chestnut Health Sys., Inc.*, No. 1:24-CV-01475-JEH-RLH, 2025 WL 1616635, at *11-12 (C.D. Ill. June 6, 2025) (applying party exception to claims under Section 2511(1)(a), (c), and (d)); *Jurgens v. Build.com*, 2017 WL 5277679, at *4 (E.D. Mo. Nov. 13, 2017) (holding that an "interception is a necessary element for each type of violation"). This construction is also supported by the harmonious-reading canon because "[t]he provisions of a text should be interpreted in a way that renders them compatible." *USA Gymnastics v. Liberty Ins. Underwriters, Inc.*, 27 F.4th 499, 516 (7th Cir. 2022) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 180 (2012)). Plaintiff's proposed theory of liability renders incompatible the provisions of the Wiretap Act because it is

[8] Perhaps aware of the weakness of her position, Plaintiff asserts the University somehow waived its ability to respond to arguments she makes in her opposition. Plaintiff's position that the University should have anticipated every tenuous argument Plaintiff might make and preemptively addressed those arguments before she made them is baseless.

nonsensical to interpret the statute as expressly *permitting* a defendant to intercept communications when that defendant is a party to the communication, and expressly *permitting* a third party to intercept those communications with the defendant's consent, but making it *unlawful* for that *same* defendant to "use" those communications or to "procure" the third party to intercept them.

Significantly, although the University included an extensive argument explaining the crime-tort exception to the party consent rule does not apply in the circumstances alleged (ECF 20 at 16-19), Plaintiff makes no effort to substantively address this argument. Instead, she includes a single sentence in a footnote asking for leave to amend and asserting that "based on Defendant's violations of the VPPA, IEA and the Federal Educational Rights and Privacy Act…the crime-tort exception would apply." (ECF 23 at 18 n.3.) But Plaintiff does not explain what allegations she would add to the Complaint, and her current Complaint already purports to assert the University had "criminal and tortious purposes[,]" including violating the VPPA, FERPA, and IEA. (ECF No. 1 ¶ 121, 125.) As the University established in its opening brief (ECF No. 20 at 15-19), Plaintiff has failed to allege a separate and independent criminal purpose, or any violation of the cited laws. *See, e.g.*, *Goulart v. Cape Cod Healthcare, Inc.*, No. CV 25-10445-RGS, 2025 WL 1745732, at *3 (D. Mass. June 24, 2025) ("“The Complaint fails …to plausibly allege that CCHC's 'primary motivation' or 'determinative factor' in disclosing plaintiffs' personal health information through the software-tracking technology to Facebook and Google was for the purpose of committing a criminal violation or tort, as opposed to commercial gain or convenience."). Plaintiff effectively conceded the crime-tort exception does not apply by failing to address the University's arguments, and she has not put forth any basis to permit amendment. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (upholding denial of leave to amend where plaintiff sought "leave without addressing the defendants' principal arguments" and failed to "respond[] to alleged

deficiencies in a motion to dismiss).

### 2. The Information Was Not Intercepted "In Transit".

Plaintiff fails to allege that any information was intercepted "in transit." She argues a tracking company's "direct" receipt of her communication establishes the receipt happened while the communication was in transit (ECF No. 23 at 20), but the allegation has no temporal component. To the contrary, Plaintiff's specific allegations suggest that two distinct transmissions of information occur – an "original" and a "second":

> When a user accesses a website hosting the Facebook Tracking Pixel, Facebook's software script surreptitiously directs the user's browser ***to send a separate message*** to Facebook's servers. This second, secret transmission contains the ***original*** GET request sent to the host website, ***along with additional data*** that the Facebook Tracking Pixel is configured to collect. This transmission is initiated by Facebook code and concurrent with the communications with the host website.

(ECF No. 1 ¶ 30 (emphasis added).) Plaintiff concedes that sending a second transmission requires a first transmission to occur. Plaintiff fails to address her own contradiction that a software script that sends a *second*, separate transmission to Facebook could occur at the same time that the initial transmission to the University was in transit. Plaintiff's Wiretap claim must be dismissed.

## C. Plaintiff Fails to Plead a Violation of the Illinois Eavesdropping Act.

Plaintiff admits she is only attempting to state a claim against the University under Section 14-2(a)(3) of the IEA, which provides: "A person commits eavesdropping when he or she knowingly and intentionally…[i]ntercepts, records, or transcribes, in a surreptitious manner, any private electronic communication *to which he or she is not a party* unless he or she does so with the consent of all parties to the private electronic communication[.]" 720 ILCS 5/14-2(a)(3) (emphasis added). Plaintiff, however, concedes "Defendant was a party to the communications at issue." (ECF 23 at 18 n. 3.) Plaintiff attempts to avoid the plain language of this provision by arguing the University should be liable as a "principal of various third parties, including the Third-

Party Tracking Companies." (ECF 23 at 22.) But she notably offers no support for interpreting the IEA in this nonsensical manner. The only case of which the University is aware to address this issue held that Section 14-2(a)(3) "only applies where a person 'is not a party' to the private electronic communication." *See Zak v. Bose*, No. 17-xv-02928, 2019 WL 1437909, at *5 (N.D. Ill. Mar. 31, 2019).

Moreover, the IEA defines "principal" as "any person who: (1) Knowingly employs another who *illegally* uses an eavesdropping device in the course of such employment; or (2) Knowingly derives any benefit or information from the *illegal* use of an eavesdropping device by another; or (3) Directs another to use an eavesdropping device *illegally* on his or her behalf." 720 ILCS 5/14-1(c) (emphasis added).[9] Because Section 14-2(a)(3) expressly *permits* the University to intercept communications to which it is a party, the University has not done anything "illegal" that would make it a "principal" by using third-party technology on its website.

Additionally, interpreting Section 14-2(a)(3) as permitting claims against a party to the communication conflicts with the statutory regime the legislature drafted. Notably, in addressing the surreptitious recording of a "private conversation" (defined as an "*oral* communication," 720 ILCS 5/14-1(d) (emphasis added)), the legislature drafted two separate provisions, one of which expressly addresses "any private conversation to which he or she *is not* a party," 720 ILCS 5/14-2(a)(1) (emphasis added), and the other of which addresses "any private conversation to which he or she *is* a party," 720 ILCS 5/142(a)(2) (emphasis added). In contrast, when addressing *electronic* communications, the legislature only drafted one provision which applies only to "any private electronic communication to which he or she *is not* a party." 720 ILCS 5/14-2(a)(3). It is illogical

[9] Plaintiff also has not alleged that the University employed another who eavesdropped. The Complaint alleges the legal conclusion that the University knowingly derives a benefit and knowingly directs another to use an eavesdropping device, but there are no allegations related to what the purported benefit is or how the University directed a third party to use an eavesdropping device. Her principal theory fails for this reason too.

for Plaintiff to argue the legislature intended to create a back door to liability for parties to an electronic communication under Section 14-2(a)(3) via a principal theory, where the legislature referred *only* to non-parties in the provision governing electronic communications, but referred to *both* parties and non-parties in the provision governing oral communications.

Plaintiff also cannot overcome her failure to allege any details regarding any supposed communication and interception or any details related to how the University procured the interception. Further, Plaintiff recognizes that a private electronic communication requires "the sending . . . party [to] intend[] the electronic communication to be private ***under circumstances reasonably justifying that expectation***." 720 ILCS 5/14-1(e); (ECF No. 1 ¶ 132). But Plaintiff fails to identify any specific communication or circumstances reasonably justifying her expectation; simply saying PII or an "education record"[10] was disclosed is a legal conclusion, not a well-pled fact. *Peters v. Mundelein Consol. High Sch. Dist. No. 120*, No. 21 C 0336, 2022 WL 393572, at *12 (N.D. Ill. Feb. 9, 2022) ("The court concludes that Plaintiff, a public school teacher, did not have a reasonable expectation of privacy in the communications made to her students during her online class, just as she had no such expectation of privacy in her classroom.").

Finally, Plaintiff admits she has not alleged any actual damages but contends she need not do so at the pleading stage. (ECF 23 at 24-25.) At a minimum, Plaintiff's claim for actual damages under the IEA should be dismissed.

## II. CONCLUSION

Plaintiff's Complaint should be dismissed with prejudice.

---

[10] As discussed above, an educational institution may disclose directory information, which includes "but is not limited to, the student's name; address; telephone listing; electronic mail address; photograph; date and place of birth; major field of study; grade level; enrollment status (*e.g.,* undergraduate or graduate, full-time or part-time); dates of attendance; participation in officially recognized activities and sports; weight and height of members of athletic teams; degrees, honors, and awards received; and the most recent educational agency or institution attended." 34 CFR § 99.3; 34 CFR § 99.37(a).

Dated: August 8, 2025

Respectfully submitted,

BAKER & HOSTETLER LLP

By: */s/ Bonnie Keane DelGobbo*

Joel C. Griswold (6277574)
Bonnie Keane DelGobbo (6309394)
Katharine H. Walton (6339805)
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 3700
Chicago, IL 60606-2859
Telephone: 312.416.6200
Facsimile: 312.416.6201
jcgrisold@bakerlaw.com
bdelgobbo@bakerlaw.com
kwalton@bakerlaw.com

*Attorneys for The University of Phoenix, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all Counsel of Record.

*/s/ Bonnie Keane DelGobbo*